41152. SOUTH CAROLINA INSURANCE COMPANY v. GLENNVILLE BANK.

D<small>ECIDED</small> F<small>EBRUARY</small> 9, 1965.

*Jones & Kemp, Charles M. Jones,* for plaintiff in error.

*Dan S. Cowart, John P. Rabun,* contra.

EBERHARDT, Judge. ■ The first proposition argued by the insurance company is that the overruling of the bank's first general demurrers established the law of the case that the petition set out a cause of action. It is pointed out that no exception was taken to this order.

This position is the correct rule under some circumstances. However, the cases are legion that demurrers filed before a material amendment to the petition do not cover the amended petition. E.g. *Bruce v. Roberts,* 219 Ga. 394 (133 SE2d 327) and citations; *Jackson's Mill &c. Co. v. Holliday,* 108 Ga. App. 663 (1) (134 SE2d 563) and citations. Such demurrers become, in that colorful judicial phrase, "extinct and nugatory." Renewal of demurrers to the original petition must be shown by the record although the trial judge may have considered the amendment in passing on the demurrer. *National Surety Corp. v. Hunt,* 105 Ga. App. 101 (123 SE2d 558) and citations.

Thus, the materiality of the two amendments is determinative of this issue. In the original count I it was alleged that the policy was canceled "pursuant to section 24" of its conditions. The amendments attached the policy, which set out section 24 in full, and were thereby material as to this count. In count II a portion of the subrogation agreement was alleged and the amendments attached the entire agreement containing additional provisions which were material. Count III was stricken. Count IV was itself a part of the amendment and the unrenewed demurrers did not purport to attack it. Furthermore as to all counts, the proof of loss attached in the amendments bears the notation "settled in compromise," a material recital.

Thus, there has been no law of the case adjudicating the

pending amended counts and the trial court was not bound by its prior overruling of the general demurrers.

[redacted] The insurance company's position on the merits fares no better. Its pleadings affirmatively show that the bank was a lienholder and that no notice of the cancellation of the policy was given it. The 1960 Insurance Code was effective January 1, 1961. *Code Ann.* § 56-115. The policy involved was issued February 1, 1961. Section 56-2430 provides, inter alia: "Notices of cancellation of policies protecting the interest of the insured *and any lienholder* shall be delivered or mailed to the last addresses of record as provided herein to the insured *and to the lienholders shown in the policy.* . ." (Emphasis added). The notice of cancellation sent the insured was ineffective as to the bank and the insurance company remained liable to it. Thus, the action for money had and received (count IV), brought on the basis that the bank was not entitled to the money in the first instance, did not set out a cause of action. *Queen Ins. Co. v. Nalley Discount Co.*, 215 Ga. 837 (114 SE2d 21) holding that a lienholder is not entitled to notice of cancellation under a policy provision similar to that contained in this policy, was decided before the 1960 Insurance Code became effective.

Nor did the remaining two counts set out a cause of action. After Folsom, the insured, was stricken as a defendant, the counts were essentially the same and alleged a breach of the subrogation agreement and policy provision. Both the policy provision and subrogation receipt contemplate an adverse party against whom recovery can be had and, under the facts, there is no intimation of anything that would attach liability to Folsom for the loss, consequently nothing to support any right of subrogation against him on the part of the company. There was no obligation on the bank to transfer the note and security instrument to the insurance company under any provision of the policy or the subrogation receipt. The subrogation and cooperation agreement in the policy, quoted in footnote 1, supra, certainly does not give rise to any obligation to make the transfers. Under this provision the company is subrogated to any right that the bank might have had against Folsom or anybody

[redacted]

else who may have been responsible *for the loss of or damage to the truck,* and the bank was bound to "execute and deliver instruments and papers and do whatever else is necessary *to secure such rights."* The only "instruments and papers" included in this obligation are those necessary to secure a subrogation of the bank's rights, if any, against Folsom or others for his liability in causing the loss of the truck. The obligation to "do whatever else is necessary" refers to the same.

Under the subrogation agreement in the receipt for the loss payment the bank bound itself not to make settlement with "any person or corporation against whom a claim may lie" for the damage to or loss of the truck without the company's consent, and to "cooperate fully with said insurance company in the prosecution of such claims," including the procuring and furnishing of all papers and documents necessary, attending court and testifying. Again, this gave rise to no obligation on the part of the bank beyond assisting the company in the enforcement of any claim that may have existed against anybody who may have been legally liable for the loss of the truck. It had no reference to Folsom's debt to the bank or the security therefor. The company merely paid the money in accordance with its contract, which, as to the bank, was still in effect. Its failure to notify the lienholder could support no right to recover from the bank.

■ The order of the court sustaining the bank's oral motion to dismiss recites that the motion was made on three grounds. Two were overruled, but the third—that the payment to the bank was voluntary—was sustained. We have held that the payment was not voluntary but, on the contrary, was a legal obligation of the company. Are we limited in our consideration of the sustaining of the motion to dismiss to the question of whether the payment was voluntary?

Some cases have laid down the rule that "when a demurrer or motion is limited by its content to a particular ground or reason by alleging that the petition or count sets forth no cause of action *'in that* etc.,' the only question raised is whether the petition or count sets forth a cause of action for the particular reason expressly assigned." *Georgia Cas. &c. Co. v. Reville,*

95 Ga. App. 358, 362 (1) (98 SE2d 210) citing *Saliba v. Saliba,* 202 Ga. 791, 795 (44 SE2d 744). However, those cases dealt with an *overruling* of the demurrer. Judge Quillian (now Justice) in *Hanover Fire Ins. Co. v. Scroggs,* 90 Ga. App. 539, 545 (2) (83 SE2d 295) clearly delineated the difference, on appellate review of general demurrers specifying grounds, between cases where the demurrer was *sustained* and where *overruled.* Where the demurrant has presented only specific grounds for his demurrer and it is overruled, the appellate court will not consider grounds not urged at the trial level; on the contrary, where the demurrer has been sustained, albeit for the wrong reason, the trial court will be affirmed if right for any reason. Consequently, we are not limited to a consideration of the ground (voluntary payment) expressed by the trial court.

*Judgment affirmed. Nichols, P. J., and Pannell, J., concur.*