A05A1129. BROWN et al. v. DORSEY et al.
(625 SE2d 16)

MIKELL, Judge.

Phyllis Brown, widow of murdered DeKalb County Sheriff-elect Derwin Brown, filed an action against the County, former DeKalb County Sheriff Sidney Dorsey, former deputies Patrick Cuffy and Melvin Walker, and their co-conspirators, Paul Skyers and David Ramsey. Mrs. Brown asserted claims against the County pursuant to 42 USC § 1983 for wrongful death, pain and suffering, and special damages resulting from the violation of Brown's First and Fourteenth Amendment rights. The superior court granted the County's

motion to dismiss it as a party to this action.[1] The case proceeded to trial on damages only against Dorsey, Cuffy, and Skyers. After a four-day jury trial, judgment was entered on the verdict for $326,136,398 in compensatory damages and $450,000,000 in punitive damages. Mrs. Brown seeks to recover the compensatory damage award from the County. Specifically, she contends that the County is liable to her for the death of her husband because Dorsey used the powers of his office to accomplish the murder.[2] She also alleges that Dorsey was a final policymaker for the County concerning the operation of the sheriff's office. The County moved for dismissal on the basis that the United States Supreme Court has placed strict limitations on local government liability under 42 USC § 1983.[3] The trial court granted the motion for the reasons that Mrs. Brown (1) failed to show that the Sheriff of DeKalb County is a county policymaker and (2) failed to identify either an officially promulgated county policy or an unofficial custom or practice binding the County for Dorsey's actions in the murder of Brown. Although we do not agree with all that is said in the trial court's order, we affirm the judgment.

"A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of her claim."[4] "In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor."[5] We apply a de novo standard of review to the trial court's ruling on a motion to dismiss.[6]

---

[1] We denied Mrs. Brown's application for interlocutory appeal on October 29, 2003. After discovery, Mrs. Brown moved for summary judgment on her § 1983 and state law claims against Dorsey and Cuffy. The trial court denied the motion in part, ruling that those defendants could not be held liable in their official capacity because the County, in turn, could not be held liable for their actions. However, the court granted the motion as to Dorsey's and Cuffy's liability in their individual capacities, ruling that the unrebutted evidence showed that they conspired with others to murder Brown.

[2] Dorsey's convictions of malice murder, two counts of violating the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"), violation of oath by a public officer, and eight counts of theft by taking were affirmed in *Dorsey v. State*, 279 Ga. 534 (615 SE2d 512) (2005).

[3] See *Monell v. Dept. of Social Svcs.*, 436 U. S. 658, 690-691 (98 SC 2018, 56 LE2d 611) (1978) (local governments cannot be held liable under § 1983 based on a respondeat superior theory). See generally Koehn, The New American Caste System: The Supreme Court and Discrimination Among Civil Rights Plaintiffs, 32 U. Mich. J. L. Reform 49 (1998) (arguing that the Supreme Court decreased the scope of § 1983 in the two decades prior to 1998).

[4] (Citation and punctuation omitted.) *Ga. Military College v. Santamorena*, 237 Ga. App. 58 (514 SE2d 82) (1999).

[5] (Footnote omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

[6] *Common Cause/Ga. v. Campbell*, 268 Ga. App. 599, 601 (2) (602 SE2d 333) (2004).

In her complaint, Mrs. Brown alleges that Dorsey utilized the sheriff's department's resources and manpower to kill her husband; that Dorsey and the other individual defendants committed the murder under color of state law; and that as the sheriff, Dorsey was the final policymaker for the County in matters concerning the use of deadly force by sheriff's department personnel, the direction and control of deputies and jailors, and the direction, control, and use of sheriff's department materials, equipment, and resources. Following oral argument on the County's motion to dismiss, Mrs. Brown amended her complaint to assert that Dorsey acted, pursuant to his authority as sheriff, "to implement a policy of keeping himself in office by eliminating his competition." Accordingly, she contends that the County is liable for Dorsey's actions.

In order to state a claim against the County under 42 USC § 1983, Mrs. Brown must allege that a County policymaker's acts or omissions, done under color of state law, resulted in the deprivation of a right, privilege, or immunity protected by the United States Constitution or the laws of the United States.[7] In other words, the plaintiff must show a deprivation of a "federal right by a person acting under color of state law."[8] Municipalities and other local government entities are included among those persons to whom § 1983 applies.[9] Municipalities and other local government entities, however, may not be held liable on a respondeat superior theory; instead, it is only when the execution of its policy or custom inflicts the subject injury that liability can attach to the entity under § 1983.[10] To make this showing, a plaintiff must prove that, through a deliberate and official policy, the local governmental entity was the moving force behind the constitutional tort.[11] "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."[12] A custom is a practice that is so settled and permanent that it takes on the force of law.[13] As succinctly stated by the late United States Supreme Court

[7] See *Epps v. Gwinnett County*, 231 Ga. App. 664, 668-669 (7) (a) (499 SE2d 657) (1998).

[8] (Citation omitted.) *Griffin v. City of Opa-Locka*, 261 F3d 1295, 1303 (B) (1) (11th Cir. 2001).

[9] *Monell*, supra, 436 U. S. at 690-691 (II). Commentators on this area of the law use the term "municipal liability" whether the entity being sued is a county, city, town, or other form of local government.

[10] *Bd. of County Commrs. v. Brown*, 520 U. S. 397, 403 (II) (117 SC 1382, 137 LE2d 626) (1997); *Monell*, supra, 436 U. S. at 694 (II).

[11] *Brown*, supra, 520 U. S. at 403-404 (II).

[12] (Citation omitted.) *Sewell v. Town of Lake Hamilton*, 117 F3d 488, 489 (11th Cir. 1997).

[13] *Monell*, supra, 436 U. S. at 691 (II).

Chief Justice Rehnquist, "[i]f the sheriff's actions constitute county 'policy,' then the county is liable for them."[14]

The United States Supreme Court has held that "municipal liability may be imposed for a single decision by municipal policy-makers under appropriate circumstances."[15] However, "municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[16] Moreover,

> [e]ven though a single decision by municipal policymakers . . . may be sufficient to establish that a municipal policy or custom caused the alleged deprivation, municipal liability may not be imposed pursuant to 42 USC § 1983 for a single incident of unconstitutional conduct . . . without proof that the conduct was taken pursuant to a municipal policy or custom.[17]

1. Mrs. Brown would have us rule that Dorsey, as Sheriff of DeKalb County, was invested with final policymaking authority sufficient to render the County liable under § 1983 for his evil, ultra vires actions.[18] We decline to make that ruling.

No Georgia appellate court has squarely addressed the issue of whether the sheriff acts with final policymaking authority for the county or for the state in the context of a § 1983 action. However, in

---

[14] *McMillian v. Monroe County*, 520 U. S. 781, 783 (117 SC 1734, 138 LE2d 1) (1997), citing *Monell*, supra, 436 U. S. at 694 (II). *McMillian* affirmed a dismissal of § 1983 claims against an Alabama county on the ground that its sheriff was a policymaker for the state and not for the county. For an analysis of *McMillian* and its effects, see generally Fitzpatrick, *Limiting Municipal Liability in Section 1983 Litigation: McMillian v. Monroe County, Alabama*, 35 Hous. L. Rev. 1357 (1998).

[15] *Pembaur v. City of Cincinnati*, 475 U. S. 469, 480 (II) (A) (106 SC 1292, 89 LE2d 452) (1986).

[16] (Citation omitted.) Id. at 483-484 (II) (B).

[17] *Means v. City of Atlanta Police Dept.*, 262 Ga. App. 700, 705 (2), n. 3 (586 SE2d 373) (2003), citing *Pembaur*, supra, 475 U. S. at 478-482. See also *Outlaw v. Nasworthy*, 250 Ga. App. 362, 365 (3) (551 SE2d 785) (2001) (evidence did not show any official policy or custom of ignoring citizen complaints); *Bell v. City of Albany*, 210 Ga. App. 371, 373 (436 SE2d 87) (1993) (no evidence of custom or policy of using excessive force against arrestees). See also *City of Cave Spring v. Mason*, 252 Ga. 3, 4 (310 SE2d 892) (1984) (§ 1983 "create[s] a cause of action, cognizable by the courts of this state, based upon acts which are in implementation of an *intentional policy*, adopted or ratified by the governing body of a public agency") (emphasis in original).

[18] See generally *Grech v. Clayton County*, 335 F3d 1326, 1342 (III) (J), n. 32 (11th Cir. 2003) (en banc) ("[t]here is not a single Georgia case [in a § 1983 action] . . . holding *a county* liable for the torts of a sheriff or his deputies") (emphasis in original).

*Grech v. Clayton County*[19] an exhaustive 6-6 plurality opinion, the Eleventh Circuit Court of Appeals held that although Ga. Const. of 1983, Art. IX, Sec. I, Par. III (a)-(b) designates the sheriff as a "county officer," the same paragraph grants the state legislature the exclusive authority to establish and control a sheriff's powers, duties, qualifications, and minimum salary.[20] The court also noted that in interpreting this constitutional provision, the Supreme Court of Georgia has stated that "[t]he sheriff is an elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission."[21] Based on these findings, and noting that "local governments such as counties can never be liable under § 1983 for the acts of those officials whom the local government has no authority to control,"[22] the Eleventh Circuit held that Clayton County could not be held liable under 42 USC § 1983 for the sheriff's improper maintenance of the Criminal Justice Information System network because the county had no control over the sheriff's performance of this function.[23] As the appeals court presciently noted, "[t]he counties' lack of authority and control over sheriffs explains why counties have no § 1983 liability for their conduct. For example, if a rogue sheriff adopted an unconstitutional law enforcement policy or practice, the county has no authority to prevent or alter it and, in turn, incurs no § 1983 liability for it."[24]

Although *Grech* is not binding precedent, we find its reasoning very persuasive. Moreover, the Supreme Court of Georgia has recently reaffirmed that "[t]he sheriff is an elected constitutional county officer and not an employee of the county commission."[25] The sheriff's duties include those that "necessarily appertain to his office, such as the power to make arrests, to maintain the peace and to enforce the law."[26] Although the county commission sets the sheriff's budget, the commissioners "may not dictate to the sheriff how that

---

[19] Id.

[20] Id. at 1332 (III) (A). A sheriff's statutory duties are defined in OCGA § 15-16-10.

[21] (Citations and punctuation omitted.) Id. at 1333, citing *Bd. of Commrs. of Randolph County v. Wilson*, 260 Ga. 482 (396 SE2d 903) (1990).

[22] (Citation, punctuation and emphasis omitted.) *Grech*, supra at 1331 (II) (B).

[23] Id. at 1348 (V) (A). Shortly after issuing *Grech*, the same 6-6 plurality of judges held in *Manders v. Lee*, 338 F3d 1304, 1305-1306 (11th Cir. 2003) (en banc) that the sheriff of Clinch County functioned as a policymaker for the state in establishing policies concerning use of force at the jail and in training and disciplining his deputies in that regard. Thus, the sheriff was held entitled to Eleventh Amendment immunity from a § 1983 suit brought by an inmate who alleged excessive use of force; the county was not party to the appeal.

[24] *Grech*, supra at 1347 (V) (A).

[25] *Bd. of Commrs. of Dougherty County v. Saba*, 278 Ga. 176, 177 (1) (598 SE2d 437) (2004), citing *Wilson*, supra. Accord *Mayo v. Fulton County*, 220 Ga. App. 825 (1) (470 SE2d 258) (1996).

[26] (Punctuation omitted.) *Chaffin v. Calhoun*, 262 Ga. 202, 203 (415 SE2d 906) (1992), citing OCGA § 15-16-10 (a) (8) and *Wolfe v. Huff*, 232 Ga. 44, 45 (205 SE2d 254) (1974).

budget will be spent in the exercise of his duties."[27] In addition, deputy sheriffs are deemed employees of the sheriff, not the county, and the county cannot be held vicariously liable for the negligence of the sheriff's deputies.[28] The sheriff alone has the power to hire and fire his deputies and jailors.[29] Further, only the Governor is authorized to suspend a Georgia sheriff.[30] We therefore conclude, as did the Eleventh Circuit in *Grech*, that the Constitution has made the sheriff independent from the County, notwithstanding the designation of the sheriff as a "county officer."[31]

Nevertheless, the question of whether the sheriff has final policymaking authority for the County for § 1983 purposes must be examined in light of the particular function at issue.[32] We thus reexamine the allegations in the complaint. Mrs. Brown asserts that Dorsey was the final policymaker for the County in matters concerning the use of deadly force by sheriff's department personnel, the direction and control of deputies and jailors, and the direction, control, and use of sheriff's department materials, equipment and resources. But, as noted above, the County has no control over the sheriff's department personnel, including its deputies and jailors. Therefore, the County cannot be held liable under § 1983 for Dorsey's use of those personnel in connection with his heinous plot to kill Derwin Brown. Finally, even though the county commission approves the sheriff's budget,[33] and the sheriff has the duty to preserve county property from injury or waste,[34] the county cannot control how the sheriff spends the budget.[35] In the absence of the ability to control the funds after they have been allocated, the County cannot be held liable for the sheriff's use of departmental resources to commit a § 1983 violation. It follows that the trial court did not err in dismissing the County as a party to Mrs. Brown's action for the reason that Dorsey

---

[27] *Chaffin*, supra.

[28] *Lowe v. Jones County*, 231 Ga. App. 372, 373 (2) (499 SE2d 348) (1998). Accord *Brown v. Jackson*, 221 Ga. App. 200, 201 (2) (470 SE2d 786) (1996); *Wayne County v. Herrin*, 210 Ga. App. 747, 751 (3) (437 SE2d 793) (1993).

[29] OCGA § 15-16-23.

[30] OCGA § 15-16-26 (c).

[31] See generally *Warren v. Walton*, 231 Ga. 495, 498-500 (1) (202 SE2d 405) (1973) (sheriff's office is exempt from Home Rule, currently Ga. Const. of 1983, Art. IX, Sec. II, Par. I (c)).

[32] *McMillian*, supra, 520 U. S. at 785 (whether sheriff acts for county or state is not an "all or nothing" proposition). See generally *City of St. Louis v. Praprotnik*, 485 U. S. 112, 123 (108 SC 915, 99 LE2d 107) (1988) (plurality opinion) ("the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area") (citations and emphasis omitted).

[33] *Wilson*, supra at 483 (1).

[34] OCGA § 36-9-8. See *Dorsey v. State*, supra at 537 (1).

[35] *Wilson*, supra.

was not a final policymaker for the County when he used departmental personnel and resources to kill her husband.

2. Although not specifically enumerated as error, we address for reasons of judicial economy the trial court's ruling that Mrs. Brown failed to identify either an officially promulgated county policy or an unofficial custom or practice binding the County for Dorsey's actions in the murder of Brown.

In *Monell*, the United States Supreme Court held that local governments may be held liable for unconstitutional actions of their employees under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[36] "But a municipality cannot be held liable solely because it employs a tortfeasor. In other words, there is no respondeat superior liability under § 1983; rather, a plaintiff must point to some official policy or custom which resulted in the injury."[37] Mrs. Brown has alleged in her amended complaint that the officially adopted and promulgated county policy, pursuant to which Dorsey's unconstitutional acts occurred, was his policy of maintaining himself in office by eliminating his competition. If we were writing on a blank slate, we would hold that one ad hoc decision does not equal a policy, because a policy by definition is a rule applicable to all similar situations, i.e., "a governing principle or plan."[38] To be sure, a single application of an unconstitutional policy can result in liability for the local government that adopted the policy. But allowing proof of one discrete illegal act, in this instance a murder, to equal proof that the government has a policy of doing such illegal acts is to eviscerate the rule in *Monell* that liability attaches to the government only when the act affecting the injury is done pursuant to a policy.[39]

We agree with the dissent in *Pembaur v. City of Cincinnati* that the majority's reasoning in that decision is circular.[40] *Pembaur* seems to hold that policy is what policymakers make and that policymakers are those who have the authority to make policy; therefore, any decision made by a policymaker is a policy.[41] In the case at bar, Mrs.

---

[36] *Monell*, supra, 436 U. S. at 690 (II).

[37] (Punctuation omitted.) *Carter v. Glenn*, 243 Ga. App. 544, 545 (1) (533 SE2d 109) (2000), citing *Watson v. Mayor &c. of Savannah*, 223 Ga. App. 399, 401 (1) (477 SE2d 667) (1996).

[38] (Punctuation omitted.) *Pembaur*, supra, 475 U. S. at 500 (Powell, J., dissenting), quoting Webster's New Twentieth Century Dictionary 1392 (2nd ed. 1979).

[39] See, e.g., *McDowell v. Brown*, 392 F3d 1283, 1290 (III) (11th Cir. 2004) (a policy or custom is a "persistent and widespread practice," not an isolated incident), citing *Depew v. City of St. Marys*, 787 F2d 1496, 1499 (II) (11th Cir. 1986) (random acts or isolated incidents normally are insufficient to establish a custom or policy).

[40] *Pembaur*, supra, 475 U. S. at 498 (A) (Powell, J., dissenting).

[41] Id. See generally Beermann, *Municipal Responsibility for Constitutional Torts*, 48

Brown argues that Dorsey was a policymaker for the County and, therefore, his ad hoc decision to murder his rival was a policy of the County.

We would reject Mrs. Brown's assertion and affirm on this ground the trial court's dismissal of the claims against the County, but *Pembaur* is binding precedent and is squarely on point. In *Pembaur*, the United States Supreme Court granted certiorari to review a decision by the Sixth Circuit Court of Appeals, which had affirmed the dismissal of § 1983 claims against an Ohio county on the explicit ground that the plaintiff had "failed to establish, however, anything more than that, on this *one occasion*, the . . . Sheriff decided to force entry into [the plaintiff's] office. . . . That single, discrete decision is insufficient, by itself, to establish that the . . . Sheriff . . . [was] implementing a governmental policy."[42] In an opinion written by Justice Brennan, the Court reversed that portion of the Sixth Circuit's decision and held that a single decision can impose § 1983 liability on a local government when the decision is made by "the official or officials responsible for establishing final policy with respect to the subject matter in question."[43]

Because Sheriff Dorsey had final authority to make policy regarding the use of deadly force by his subordinates, we are prevented by *Pembaur* from affirming the dismissal on the ground that Dorsey's decision to murder Brown was one discrete decision and not a policy. As argued by the dissent in *Pembaur*, that controlling federal precedent in effect imposes respondeat superior liability on local governments for the intentional acts of "a certain category of employees, *i.e.*, those with final authority to make policy."[44]

If Dorsey had had the final authority to make policy on behalf of the County, then the pleadings filed by Mrs. Brown, including the amended complaint, would be sufficient to withstand a motion to dismiss brought by the County.[45] However, as explained in Division 1, supra, Dorsey was a policymaker for the state and not for the County

---

DePaul L. Rev. 627, 659 (1999) (noting "fundamental disagreement within the [Supreme] Court over what it means for an official to make policy").

[42] (Emphasis in original.) *Pembaur*, supra, 475 U. S. at 476-477, citing *Pembaur v. City of Cincinnati*, 746 F2d 337, 341 (II) (6th Cir. 1984).

[43] *Pembaur*, supra, 475 U. S. at 483 (II) (B).

[44] (Citations omitted; emphasis in original.) Id. at 499 (II) (A) (Powell, J., dissenting).

[45] See, e.g., *Beedle v. Wilson*, 422 F3d 1059, 1068 (II) (A) (3) (10th Cir. 2005) (allegations in complaint that hospital's decision to sue plaintiff for libel constituted an official policy or custom sufficient to state a claim against hospital for violating his First Amendment rights); *Wilson v. Civil Town of Clayton*, 839 F2d 375, 382 (II) (B) (7th Cir. 1988) (allegations in complaint that town trustees conspired to have plaintiff's landlord evict him from his business property were sufficient to allege official policy and impose § 1983 liability on town). Compare *Wilson v. City of Boston*, 421 F3d 45, 59 (1st Cir. 2005) ("An unconstitutional policy may be inferred from a single decision or act but the isolated action must be taken by a municipal official with 'final

with regard to the particular functions at issue. For that reason, the trial court properly dismissed the claims against the County.[46]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 14, 2005 —
RECONSIDERATION DENIED DECEMBER 14, 2005 — 

*Casey, Gilson & Leibel, Steven K. Leibel, George P. Shingler, Guy H. Weiss*, for appellants.

*William J. Linkous III, Melanie F. Wilson, Sam L. Brannen, Jr., Viviane H. Ernstes, E. Duane Jones, Brian Steel*, for appellees.

---

policy-making authority' in the relevant area of the city's business.") (citation and punctuation omitted).

[46] A judgment right for any reason will be affirmed. *South Carolina Ins. Co. v. Glennville Bank*, 111 Ga. App. 174, 179 (2) (b) (141 SE2d 168) (1965).