## A09A0205. CAMDEN COUNTY v. LEWIS.

### (680 SE2d 621)

MILLER, Chief Judge.

During the construction of a retail seafood business on marshland property owned by Ron Lewis ("Lewis"), Camden County ("the County") issued a stop work order on the construction due to multiple ordinance violations. Thereafter, Lewis filed a complaint seeking a writ of mandamus against the County requiring it to revoke its stop work order to permit completion of his building. Lewis alleged that the County violated his constitutional rights to due process and equal protection under the United States and Georgia Constitutions in violation of 42 USC § 1983 ("§ 1983"), and he claimed detrimental reliance upon the County's issuance of a building permit and occupational tax certificates for his seafood business. We granted the County's application for interlocutory appeal from the trial court's order partially denying its motion for summary judgment, and the County appeals. Specifically, the County

argues its entitlement to summary judgment because the trial court erred in finding genuine issues of material fact remaining on (i) Lewis' claims for violation of his civil rights and detrimental reliance; and (ii) damages incurred by Lewis before April 12, 2007 and attorney fees and expenses of litigation under OCGA § 9-15-14. For the reasons set forth below, we agree and reverse.

We review the grant or denial of a motion for summary judgment de novo, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *Norton v. Cobb*, 284 Ga. App. 303-304 (643 SE2d 803) (2007).

So viewed, the record shows that Lewis was the owner of 42 acres of land in Waverly, and planned to construct a building there for the purpose of selling wholesale and retail seafood to the public, including cooked seafood lunchbox meals for takeout orders. On March 8, 2005, Lewis applied for and received Building Permit No. 05-70 for the construction of an "open shed" on his property. On the same date, however, he decided that he needed a larger building. Consequently, he applied for and received BP2005-70, for the construction of an 800 square foot commercial outbuilding. At that time, Lewis also applied for and received a permit to install a septic system to support the construction he proposed, but in his application, he indicated that he was building a live bait shop.

After issuance of BP2005-70 to Lewis, County Building and Planning employees concluded that the permit had been issued erroneously due to the structure's noncompliance with certain electrical, plumbing and zoning provisions of the County's Building and Construction Codes ("the Codes"). On February 27, 2006, the County notified Lewis that his building was the subject of numerous violations of the Codes, and simultaneously issued a stop work order. Thereafter, Lewis filed his action for a writ of mandamus and sought damages for civil rights violations, detrimental reliance, expense for delay, lost profits, and attorney fees and costs.

On April 12, 2007, the parties entered into a Consent Order, which purported to resolve the dispute except as to Lewis' claims for "civil rights violation(s), damages, attorney['s] fees and court costs[,]" which were to remain "in the breast of the court for final determination[.]" Thereafter, the County moved for summary judgment on the ground that Lewis, as a matter of law, was not entitled to judgment on the same. After a hearing, the trial court granted summary judgment to the County on Lewis' punitive damages claim, as not authorized in "civil rights actions against local governments[,]" and on Lewis' claims for "actual damages allegedly incurred after April 12, 2007." Further, the trial court expressly denied "[Lewis'] claims for actual damages allegedly incurred prior to [April 12], and for recovery of such portion of [Lewis'] attorney[ ] fees and litigation expenses as are

shown to have been incurred in contesting positions taken by [the County] which were frivolous." The trial court sub silentio, denied summary judgment to the County on Lewis' § 1983 and detrimental reliance claims, finding that it could not "conclude as a matter of law that at trial [Lewis] will be unable to point out one or more arguably meritless positions taken by [the County]."

1. The County contends that the trial court erred in denying it summary judgment as to Lewis' claim for violation of his civil rights under § 1983 and for detrimental reliance. We agree.

> In order to prevail on a motion for summary judgment (OCGA § 9-11-56), a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence.

(Citations and punctuation omitted.) *Reed v. Ed Taylor Constr. Co.*, 198 Ga. App. 595, 596 (402 SE2d 346) (1991). "A defendant is entitled to summary judgment if he produces evidence conclusively establishing facts which negate one or more essential elements of the plaintiff's action. [Cit.]" Id.

(a) 42 USC § 1983 claim.

42 USC § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to state a claim under § 1983, the plaintiff "must show a deprivation of a 'federal right by a person acting under color of state law.'" (Punctuation and footnote omitted.) *Brown v. Dorsey*, 276 Ga. App. 851, 853 (625 SE2d 16) (2005). Although municipalities and other local government entities are included among those persons to whom § 1983 applies, the County cannot be held liable under a respondeat superior theory for the actions of its employees. Id. Rather, "it is only when the execution of its policy or custom inflicts the subject injury that liability can attach to the [County] under § 1983." (Footnote omitted.) Id.

> To make this showing, a plaintiff must prove that, through a deliberate and official policy, the local government entity

was the moving force behind the constitutional tort. A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. A custom is a practice that is so settled and permanent that it takes on the force of law.

(Punctuation and footnotes omitted.) Id.; see *Doss v. City of Savannah*, 290 Ga. App. 670, 674 (1) (660 SE2d 457) (2008) (City was entitled to summary judgment on Doss' § 1983 claim since "local governments cannot be held liable under § 1983 on a respondeat superior theory and there was no evidence of any deliberate and official policy or custom" which violated Doss' due process rights).

By his complaint, Lewis failed to assert that any employee was a policymaker for the County in matters concerning the illegal issuance of a stop work order or improper enforcement of its ordinances against the property of its citizens and introduced no evidence in opposition to the County's motion for summary judgment. As such, Lewis cannot state a claim under § 1983 because he failed to point to any evidence of an officially adopted and promulgated County policy or custom. *Doss*, supra, 290 Ga. App. at 674 (1).

The County's Building Code ("Building Code") requires the permit holder to "notify the building official when work is ready for inspection." Building Code, § 109.5. "Work shall not be done beyond the point indicated in each successive inspection without first obtaining the approval of the building official." Id. at § 109.6. Further, the parties' Consent Order provided that "[a] full Certificate of Occupancy will be issued for [Lewis'] building upon successful passage of final electrical and plumbing inspections." Since Lewis admitted that he failed to secure successful passage of final electrical and plumbing inspections by the County's building official, the County was authorized to issue the stop work order. Further, Lewis has not shown that he was treated differently than other county citizens. Accordingly, the trial court erred by failing to grant summary judgment to the County on Lewis' § 1983 claim.

(b) Detrimental reliance.

The County also contends the trial court erred in denying it summary judgment on Lewis' claim for detrimental reliance upon the County's issuance of BP2005-70, occupational tax certificates, and representations by County officials. Again, we agree.

Lewis cannot state a claim for detrimental reliance where, as here, the County erroneously issued the permit for a "commercial" outbuilding. The issuance of a permit was permissible only for an outbuilding, i.e., an accessory structure for secondary uses, like a garage or storage. Loretta Riggins-Hylton, planning director of the

YALE LAW LIBRARY

County's planning and building department, deposed that a commercial building would not qualify as an outbuilding. Since the permit was mistakenly issued, Lewis did not have a vested right to complete the construction of his building. *Enviro Pro v. Emanuel County*, 265 Ga. App. 309, 312 (593 SE2d 673) (2004) (holding ultra vires acts by chairperson did not vest right). Likewise, "[w]here a permit is issued by a governing body in violation of an ordinance, even under a mistake of fact, it is void, and its holder does not acquire any rights." *Union County v. CGP, Inc.*, 277 Ga. 349, 351 (2) (589 SE2d 240) (2003).

Further, the issuance of a certificate of occupancy "shall not be construed as an approval of a violation of the provisions of [the Building Code] or of other ordinances of the jurisdiction." Building Code, supra, at § 110.1. Under § 110.4 of the Building Code, the County's building official was

> authorized to . . . suspend or revoke a certificate of occupancy or completion issued under the provisions of this code wherever the certificate is issued in error, or on the basis of incorrect information supplied, or where it is determined that the building or structure or portion thereof is in violation of any ordinance or regulation or any of the provisions of this code.

Here, Lewis' project had not obtained septic approval by the Environmental Health Department ("EHD"), contrary to § 18-37 of the County's Construction Code: "[c]ertificates of occupancy will not be issued until the completed water supply and sewage disposal facilities have been approved by the board of health." See also Building Code, supra, at § 1302 (5) ("[w]hen the certificate of approval for the water and sewage disposal systems have been received along with the approval of the electrical and plumbing systems, the building and zoning department of Camden County shall issue a certificate of occupancy, provided that all other applicable requirements have been met . . .").

In his application for a septic system on his property, Lewis indicated that the building would merely be used as a live bait shop. Despite receiving written notification from EHD officials in November 2005 and March 2006 requesting a new septic application and site plan for his facility given its actual use as a seafood processing business, Lewis failed to provide the requested information to secure a commercial permit. Claiming that the County had already issued him a permit by its duly licensed representative, Lewis deposed that he had not conducted any illegal activities on his property. Given that the building permit was issued mistakenly based on Lewis' failure to

obtain septic approval from EHD and the requisite electrical and plumbing inspections as required by the Building Code, he cannot claim that he had a vested right to proceed with the construction of his seafood business. *Union County*, supra, 277 Ga. at 351 (2) (holding unofficial "approval" of construction plans without regard to the restrictions of flood ordinances would "frustrate Union County's duty to its residents to enforce the law . . ."); *Corey Outdoor Advertising v. Bd. of Zoning Adjustments &c.*, 254 Ga. 221, 224 (3) (327 SE2d 178) (1985) ("equitable estoppel will not apply so as to frustrate or contravene a governmental function of a governmental unit").

Lewis also fails to point to any representations made by County officials that he could "complete construction of his building and conduct a retail and wholesale seafood business on his property including processing and cooking the seafood and selling same to the public." Even if County officials made such representations, Lewis cannot legally bypass the Building Code's requirements for inspections and septic approval. To the extent that Lewis claims that his friend, Dr. Stuart Stevens, a former EHD Manager, represented that his residential and commercial septic tanks passed final approval, such approval occurred in December 2004 and predated Lewis' application for a commercial permit for his seafood business. As such, Lewis' commercial septic tank only had approval for its connection to an RV trailer, but not final approval for its connection to a retail and wholesale seafood business, of which EHD had no updated information. Moreover, it was EHD's standard practice to perform final inspections of septic installations to determine if any problems existed, particularly if no final inspection had been completed for over a year.

Since Lewis has failed to produce any evidence to create a jury issue on his detrimental reliance claim,[1] the trial court erred in failing to grant summary judgment to the County on such claim.

2. The County argues that the trial court erred in denying it summary judgment on Lewis' claim for damages incurred before April 12, 2007 because the evidence fails to show that the County proximately caused Lewis' damages or that he suffered any damages. The County also contends that the trial court erred in failing to grant it summary judgment on Lewis' claim for attorney fees and expenses of litigation under OCGA § 9-15-14.

---

[1] In his appellate brief, Lewis attempts to introduce four exhibits purporting to show his alleged compliance with the County's Codes. Given that Lewis has failed to file a motion to supplement the record pursuant to Court of Appeals Rule 41 (c), we will not consider these exhibits for any purpose. Court of Appeals Rule 41 (c) (supplemental materials shall not be attached to motion to supplement the record unless directed by the Court).

(a) Damages incurred before April 12, 2007.

Inasmuch as Lewis deposed that he was not seeking damages of any type[2] as a consequence of his action and has not come forward with any evidence to the contrary in opposition to the County's motion for summary judgment, the trial court erred in denying summary judgment to the County on Lewis' claim for damages incurred prior to April 12, 2007. Further, as discussed in Division 1, any damages allegedly suffered by Lewis were the result of his own noncompliance with the Codes and the Consent Order, not any actions by the County.

(b) OCGA § 9-15-14 attorney fees and expenses of litigation.

The County argues that the trial court erred in failing to grant it summary judgment on Lewis' request for attorney fees and expenses of litigation under OCGA § 9-15-14. Given that Lewis did not move for attorney fees and expenses of litigation pursuant to this Code section, we agree.

In Lewis' complaint, he sought attorney fees and costs based on the County's "stubborn litigiousness," yet failed to cite OCGA § 9-15-14 as the legal basis for his recovery. Further, Lewis never requested attorney fees and expenses pursuant to this Code section in writing or orally within 45 days of the trial court's order on summary judgment. OCGA § 9-15-14 (f) (attorney fees and expenses may be requested by motion at any time during the course of the action but not later than 45 days after the final disposition of the action); *Nesbit v. Nesbit*, 295 Ga. App. 763, 764 (673 SE2d 272) (2009) (request for attorney fees under OCGA § 9-15-14 may be made orally if made during a hearing or trial). As such, the trial court erred in reserving Lewis' claim for attorney fees and litigation expenses pursuant to OCGA § 9-15-14 for a jury.

In light of the foregoing, we reverse the trial court's order partially denying the County's motion for summary judgment on Lewis' § 1983 claim, detrimental reliance claim, actual damages incurred before April 12, 2007, and attorney fees and expenses of litigation under OCGA § 9-15-14.

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JUNE 29, 2009.

*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Corinne W. Caughman*, for appellant.

---

[2] When Lewis was asked in his deposition about what damages he was seeking, he responded, "I don't think we are at that point. I think that train's left." He also stated that he is "not even interested in trying to resolve [the case] because [he] see[s] that it can't be resolved."

Ronald A. Lewis, *pro se.*

## A09A0540. HORNE v. THE STATE.
(680 SE2d 616)

BARNES, Judge.

Benjamin Horne was convicted of kidnapping with bodily injury, aggravated assault, false imprisonment, and two counts of family violence battery. The trial court merged the false imprisonment count with the kidnapping count, and gave Horne a mandatory life sentence, 20 years to serve 12 in confinement on the aggravated assault count, and 12 months on each of the battery counts, all to be served concurrently. Horne argues four grounds on appeal: (1) the trial court erred in instructing the jury that the asportation required to prove kidnapping need only be slight; (2) his trial counsel was ineffective; (3) his life sentence was cruel and unusual; and (4) the trial court erred in denying his request for funds to hire an expert to evaluate Horne's mental competency. For the reasons that follow, we affirm the convictions.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that Horne had been living with the victim for three years. In April 2005, while their daughter was away from home, the couple returned home from an evening out and an argument ensued, in which Horne accused the victim of flirting with Horne's brother. The argument escalated over the course of several hours until Horne dragged the victim out of bed and began kicking and slapping her until she backed into the closet, then Horne blocked the closet door so she could not get out. After some time passed, Horne came into the closet and began choking the victim until she blacked out. He dragged her into the dining room and abused her further, then directed her to get dressed and put on makeup because they were going to return the ring he had bought her and then go to his brother's apartment. He threatened to kill her if she did not leave with him. Before they left, Horne made the victim write out a "confession" detailing her interest in his brother.

Horne drove the couple to a convenience store and went in to buy something while the victim waited in the car, afraid she would be

unable to get away if she tried. He then drove them to a mall and took the ring inside while the victim waited in the car, but the jeweler was closed, and Horne returned so quickly the victim had no time to run. Finally, Horne drove to his brother's apartment complex and went inside, again leaving the victim in the car. As soon as he turned the corner the victim jumped out and banged on the windows of a car that had just pulled into the parking lot, begging for help. The couple in the car let her get in, gave her a cell phone to call 911, and drove her to a nearby grocery store where she met the police. An ambulance took the victim to the hospital, and Horne was arrested at his brother's apartment the next day.

Horne was charged with aggravated sexual battery, aggravated assault by holding a knife to the victim's throat, kidnapping with bodily injury consisting of cuts to the victim's mouth and bruising on her legs, aggravated assault by beating and choking the victim until she lost consciousness, false imprisonment by barricading the victim in a closet, and two counts of family violence battery, one for bruising the victim's eye area and one for bruising her thighs.

At trial the victim testified at length, as did the man who drove her from the apartment complex to meet the police, a 911 operator, four police officers, and a victim advocate. The State introduced numerous pictures of the victim's injuries, and several witnesses testified they had witnessed the victim's injuries. The investigators testified that the scene was consistent with the victim's story, as were her injuries. For example, they found scuff or drag marks between the bedroom closet and dining room and the victim's knees were red and injured. They found a belt the victim described Horne hitting her with, as well as broken picture frames, photographs Horne had cut up, and a blood-stained pillow.

Horne testified that the victim, who was larger than he was, was the dominant partner in their relationship. Horne also testified that he and the victim argued loudly on many occasions which ended with the victim slapping him or punching him. Until the night of the incident he had never hit back, he said. On the night of the incident he and the victim had a long discussion about the victim's attraction to his brother and other matters. Horne testified that after the discussion, the victim came at him "kicking and slapping and just flailing at me." He testified that he did not think, he just hit her back because he feared for his safety, and the two struggled. He felt bad about himself afterward, and broke picture frames in the living room and cut himself out of photographs. Horne testified that the victim left with him willingly to go to the convenience store, the mall, and his brother's apartment, where he went to buy some marijuana. He admitted on cross-examination that he and the victim had used methamphetamine the day before.

The jury acquitted Horne of the aggravated sexual battery and aggravated assault with a knife charges, and convicted him of the other charges. We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Horne guilty beyond a reasonable doubt of aggravated assault by choking the victim with his hands, kidnapping with bodily injury, false imprisonment by confining the victim in a closet, and two counts of family violence battery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Horne argues that the trial court erred in charging the jury that to prove kidnapping, "only the slightest movement of the victim is required to constitute the necessary element of asportation." The State argued in closing that "slight movement" of a few feet was sufficient and either of two incidents supported the kidnapping conviction. First, the victim was dragged from her bedroom closet to the dining room; second, Horne forced the victim under threats to drive away with him.

In November 2008, the Supreme Court of Georgia held that the asportation required to support a conviction for kidnapping must be more than "slight." *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008).[1] Per *Garza*, we assess four factors to determine whether the evidence of asportation is sufficient to sustain a kidnapping conviction: (1) the duration of the movement; (2) whether the movement occurred during the commission of a crime other than kidnapping; (3) whether the movement was an inherent part of that other crime and "(4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense." Id. at 702.

In this case, however, Horne requested the instruction given and has therefore waived any challenge to the use of that instruction. *Sampson v. State*, 282 Ga. 82, 84-85 (5) (646 SE2d 60) (2007).

Horne also argues that dragging the victim to the dining room would not constitute kidnapping under *Garza*, even if driving the victim to another location would, and therefore we must reverse because "'when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside.'" *Sandstrom v. Montana*, 442 U. S. 510, 526 (99 SC 2450, 61 LE2d 39) (1979). While *Garza* did not find the

---

[1] The legislature subsequently amended the kidnapping statute to provide that slight movement *is* sufficient to prove kidnapping as long as the movement was not incidental to another offense, then further defined what actions would not be incidental to another offense. This statute applies to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4. The crime in this case occurred in April 2005, and therefore the standard set forth in *Garza* applies.

YALE LAW LIBRARY

kidnapping statute unconstitutional, Horne argues that its new evidentiary rule makes invalid one of the two scenarios the State argued, which was that he committed the offense by dragging the victim from the bedroom closet to the dining room, citing *Crawford v. State*, 254 Ga. 435, 439 (1) (330 SE2d 567) (1985). *Crawford* does not apply in this case, however, because that defendant was only indicted for felony murder but the trial court charged the jury on both felony and malice murder. Thus the jury's ambiguous guilty verdict could have been based on an unindicted crime. The court reversed and remanded for a new trial.

In this case, Horne was charged with one count of kidnapping with bodily injury, and we review the evidence in the light most favorable to the verdict to determine if it is sufficient to sustain the convictions. *Campbell v. State*, supra, 278 Ga. at 840. Our courts have applied *Garza* on a case-by-case basis to determine whether moving a person from room to room constitutes sufficient asportation to affirm a kidnapping conviction. In *Henderson v. State*, 285 Ga. 240 (675 SE2d 28) (2009), the Supreme Court of Georgia held that moving the victims from one room to another within a duplex was sufficient asportation because, although of minimal duration, it was not an inherent part of the armed robbery and created an additional danger to the victims by enhancing the gunmen's control over them. See also *Epps v. State*, 297 Ga. App. 66 (676 SE2d 791) (2009), affirming a kidnapping charge when the victim was driven around for a substantial amount of time before and after being robbed. Conversely, in *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849) (2008), this court reversed two kidnapping convictions, reasoning that moving one victim from a standing position to the floor and another from room to room were of short duration, were incidental to other crimes, and did not significantly increase the danger to either victim. See also *Grimes v. State*, 297 Ga. App. 720 (678 SE2d 167) (2009); *Crawford v. State*, 297 Ga. App. 187 (676 SE2d 843) (2009); *In the Interest of A. B.*, 296 Ga. App. 350 (674 SE2d 401) (2009).

In this case, moving the victim from the closet to the dining room was not incidental to any of the other crimes for which Horne was charged and created additional danger for the victim by placing her in a more open space where Horne could abuse her more easily. The injuries for which Horne was convicted occurred before or after the dragging. And the journey in the car was of more than minimal duration and took place after Horne assaulted the victim. Consequently, either scenario argued by the State supports the kidnapping conviction, which we therefore affirm.

2. Horne argues that his trial counsel was ineffective for a laundry list of reasons: for failing to visit the scene, failing to

interview the State's witnesses, failing to hire any experts, failing to demur to the kidnapping charge, failing to make an opening statement, and using only forty-five minutes out of a potential two-hour closing.

The burden is on the defendant claiming ineffectiveness of counsel to establish that his attorney's representation in specific respects fell below an objective standard of reasonableness, and that "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984). The "reviewing court need not address both components if the defendant makes an insufficient showing on one, nor must the components be addressed in any particular order." (Citation and punctuation omitted.) *Nelson v. State*, 255 Ga. App. 315, 322-323 (10) (565 SE2d 551) (2002).

Trial counsel has a duty to make a reasonable investigation. We have held trial counsel was ineffective when he failed to uncover an alleged victim's numerous prior false molestation allegations. *Gibbs v. State*, 287 Ga. App. 694, 697-698 (1) (a) (i) (652 SE2d 591) (2007). The Supreme Court of Georgia found both trial counsel ineffective in a murder case for preparing for trial in a careless and unreasonable manner as shown by comparing the evidence presented at trial with the evidence presented at the motion for new trial hearing that trial counsel failed to discover. *Terry v. Jenkins*, 280 Ga. 341, 347 (2) (c) (627 SE2d 7) (2006). But here, unlike the defendants in *Gibbs* and *Terry*, Horne has not developed for comparison evidence his counsel should have uncovered but did not, other than the incident between the victim and her landlady discussed infra, or testimony an expert witness would have presented but did not. He simply argues that trial counsel should have investigated further. This argument does not establish that trial counsel's performance was deficient.

Further, trial counsel explained that he did not make an opening statement because he wanted to get into his evidence more quickly and he thought the case was proceeding well for them. He also explained that he thought arguing for more than 45 minutes was not effective, that he thought the kidnapping indictment was clear based on the reports he read, and that he did not move for a directed verdict because making it would have been in bad faith as the State had presented sufficient evidence to go to a jury. He did not move to exclude evidence of Horne's drug use because he thought the issue might not come up at all, but if the victim had admitted drug use it would have helped the defense; the State's inventory of the search warrant found no drugs; and counsel was surprised by Horne's answer on cross-examination that he went to his brother's apartment to obtain marijuana. These decisions are strategic, and as a

general rule, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. *Wright v. State*, 274 Ga. 730, 732 (2) (b) (559 SE2d 437) (2002).

Horne asserts that his counsel was ineffective for failing to investigate an incident in which he alleged the victim tried to bring false assault charges against her former landlady and wanted Horne to lie about it, and was ineffective for failing to cross-examine the victim regarding the incident. Whether the victim was untruthful at some other time is not relevant to whether she was truthful in this case. Trial counsel was not ineffective for failing to develop such irrelevant evidence. *Ramsay v. State*, 220 Ga. App. 618, 622 (1) (469 SE2d 814) (1996).

3. Horne asserts that his life sentence for the offense of kidnapping with bodily injury is cruel and unusual, particularly considering that the victim's injuries were slight. We have held that a sentence of life imprisonment for kidnapping with injury is authorized by the statute. *Fulcher v. State*, 259 Ga. App. 648, 649-650 (2) (578 SE2d 264) (2003). Our Supreme Court has held that OCGA § 16-5-40 (b) (4) does not violate the Eighth Amendment prohibition against cruel and unusual punishment even though it mandates a life sentence if the victim suffers any bodily injury, regardless of its severity. *Albert v. State*, 180 Ga. App. 779, 786-787 (9), (10) (350 SE2d 490) (1986). Further, the statute is not unconstitutionally vague for failing to define "bodily injury." Id. We adhere to this ruling, and find Horne's enumeration of error to be without merit. See *Lloyd v. State*, 226 Ga. App. 401, 403 (4) (487 SE2d 44) (1997).

Further, nothing in the record indicates that Horne did not understand the proceedings. The court observed and commented on Horne's demeanor in its ruling on his motion for new trial, noting that he participated in the trial and appeared to have assisted his attorney throughout. This enumeration is without merit.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JUNE 29, 2009
Kidnapping, etc. Hall Superior Court. Before Judge Fuller.
*W. Andrew Maddox*, for appellant.

*Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney*, for appellee.