A02A0245. INSURANCE DEPARTMENT OF THE STATE OF GEORGIA et al. v. ST. PAUL FIRE & CASUALTY INSURANCE COMPANY et al.

(559 SE2d 754)

PHIPPS, Judge.

The Georgia Commissioner of Insurance found that the decision of a group of affiliated insurance companies[1] not to renew approximately 1,260 medical malpractice policies for physicians and surgeons in Georgia was an unfair trade practice under OCGA § 33-6-5 (12), which limits insurers' ability to "cancel an entire line or class of business." The insurers (collectively St. Paul) sought review in the superior court, which reversed the Commissioner's decision. The Commissioner and the Insurance Department of the State of Georgia (collectively the State) appeal. Because we agree with the superior court that St. Paul's actions did not fall within the scope of OCGA § 33-6-5 (12), we affirm.

The record shows that St. Paul issued medical malpractice insurance policies to various health care providers in Georgia, including "stand-alone" policies to physicians and surgeons who were not insured through a hospital or institution. On May 11, 2001, St. Paul informed its agents that it would not renew approximately 1,260 of these stand-alone policies due to underwriting losses. St. Paul then began sending notices of nonrenewal to the affected insureds as the annual expiration dates of their policies approached.

---

[1] St. Paul Fire & Casualty Insurance Company, St. Paul Fire & Marine Insurance Company, St. Paul Guardian Medical Insurance Company, St. Paul Medical Liability Insurance Company, and St. Paul Mercury Insurance Company.

On May 23, the Commissioner ordered St. Paul to show cause why it should not be prevented from violating OCGA § 33-6-5 (12), which provides that

> [n]o insurer shall cancel an entire line or class of business unless the insurer demonstrates to the satisfaction of the Commissioner that continuation of such business would violate the provisions of this title or would be hazardous to its policyholders or the public.

After a hearing, the Commissioner found that St. Paul's nonrenewal of the 1,260 stand-alone policies did, indeed, violate OCGA § 33-6-5 (12), ordered St. Paul to "cease and desist" from the nonrenewals, and imposed a variety of penalties. St. Paul sought review in the Superior Court of Fulton County, arguing that the statute did not apply because (1) it nonrenewed the policies in question, rather than *cancelled* them; and (2) its action did not affect an *entire line or class of business*, but only a subset of its medical malpractice line. The superior court agreed with St. Paul and reversed the Commissioner's order.

This case turns on the correctness of the Commissioner's interpretation of key terms in OCGA § 33-6-5 (12), which is part of the Insurance Code that he is charged with administering. " 'The interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference.' "[2] However, a reviewing court is "authorized to make an independent determination as to whether the interpretation of the administrative agency correctly reflects the plain language of the statute and comports with the legislative intent. [Cits.]"[3]

The cardinal rule of statutory interpretation is to ascertain the legislature's purpose in enacting a statute and then construe the statute to effect that purpose,[4] avoiding interpretations that do not "square with common sense and sound reasoning."[5] Language in one part of the statute must be interpreted in light of the legislature's intent as found in the whole statute.[6] But if the statutory language is

---

[2] (Citations omitted.) *Commr. of Ins. v. Stryker*, 218 Ga. App. 716, 718 (5) (463 SE2d 163) (1995).

[3] *Sawnee Elec. Membership Corp. v. Ga. Public Svc. Comm.*, 273 Ga. 702, 706 (544 SE2d 158) (2001).

[4] Id. at 704.

[5] (Citations and punctuation omitted.) *Simpson v. Southwire Co.*, 249 Ga. App. 406, 407 (1) (548 SE2d 660) (2001).

[6] Id. at 408.

plain and unequivocal,s then "judicial construction is not only unnecessary but forbidden."[7]

1. The first issue is the meaning of "cancel" in OCGA § 33-6-5 (12). The Commissioner found that the statute "applies to termination by any means, whether it is technically denominated as a cancellation or a nonrenewal." The superior court disagreed, ruling that the statute's plain language and legislative history show that it applies only to cancellations, and not to nonrenewals, of policies. We agree with the superior court.

First, the Insurance Code repeatedly distinguishes between cancellation and nonrenewal of policies, indicating that the terms are not synonymous. For example, OCGA §§ 33-24-44 to 33-24-47 prescribe different procedures for the cancellation of a policy before its expiration date and the refusal to renew a policy after that date. The State argues that the distinction between cancellation and nonrenewal in unrelated chapters of the Insurance Code does not illuminate the definition of "cancel" in the chapter of the Code addressing unfair trade practices. However, OCGA § 33-6-5 (8) — which *is* part of the unfair trade practices chapter — provides, with certain exceptions, that no insurer shall "*cancel*, modify coverage, refuse to issue, or *refuse to renew* any property or casualty insurance policy"[8] solely because of an applicant or insured's physical or mental impairment. The legislature's inclusion of both "cancel" and "refuse to renew" in OCGA § 33-6-5 (8) indicates that, contrary to the State's contention, those terms are not interchangeable for the purpose of the unfair trade practices chapter.

Second, this Court previously has recognized that cancellation and nonrenewal are not the same thing. In *Banks v. Aetna Cas. &c. Co.*,[9] Aetna refused to renew Banks's motor vehicle insurance policy after she reported two losses. Banks, who denied fault in both incidents, sued Aetna under OCGA § 33-9-40, which provides that an insurer may not "cancel" a policy if the insured is involved in a multivehicle accident that is not her fault. Banks argued that Aetna's failure to renew her policy was a cancellation in violation of the statute. We disagreed:

> If OCGA § 33-9-40 forbade "termination" where a policy holder was not at fault Banks might be right. However, that code section employs instead the more restrictive term "cancel," which does not include "nonrenewal." While the insurance carrier could not cancel the policy for accidents not the

[7] (Citation omitted.) *Glover v. State*, 272 Ga. 639, 640 (533 SE2d 374) (2000).

[8] (Emphasis supplied.)

[9] 189 Ga. App. 758 (377 SE2d 685) (1989).

fault of its insured, it was not prohibited from declining to renew the policy for that reason.[10]

Citing *Henderson v. Alexander*,[11] the State argues that because OCGA § 33-6-5 (12) is a remedial statute designed to prevent unfair trade practices, it must be construed broadly to effect its equitable goals:

Statutes that are remedial[ ] are to receive an equitable interpretation, by which the letter of the Act is sometimes restrained and sometimes enlarged, so as more effectually to meet the beneficial end in view, and prevent a failure of the remedy. They are to be construed liberally and *ultra*, but not *contra* to the strict letter. [Cits.][12]

We agree that uncertainties or ambiguities in remedial statutes should be resolved in favor of a liberal interpretation. But there is no uncertainty or ambiguity here; as explained above, "cancel" clearly does not encompass "nonrenew." Interpreting "cancel" in that manner would be "*contra* to the strict letter"[13] of the statute. Where statutory language is plain and not capable of multiple interpretations, "the court is not authorized to construe the act according to the supposed intention of the legislature."[14]

The State is asking for more than a broad construction of the statute in this case. It is asking for a construction contrary to the plain meaning of the term "cancel" as that term is used in the insurance industry, in the Insurance Code, and in our case law. By its plain terms the statute limits the power of an insurer to "cancel an entire line or class of business," thereby effectuating an immediate, widespread interruption of insurance coverage. This is a far cry from discontinuing a line of business by refusing to renew policies as they come up for renewal.

According to the State, a literal interpretation of "cancel" in OCGA § 33-6-5 (12) would make the statute "wholly ineffective" by creating a "loophole big enough for any insurer to accomplish an unlawful mass termination." While courts are to avoid statutory interpretations that create absurd or unjust results,[15] that is not the

---

[10] Id. at 759.

[11] 2 Ga. 81 (1847).

[12] (Emphasis in original.) Id. at 85.

[13] (Emphasis in original.) Id.

[14] *Floyd County v. Salmon*, 151 Ga. 313, 315 (106 SE 280) (1921); see also *Home Indem. Co. v. Battey Machinery Co.*, 109 Ga. App. 322, 324 (1) (136 SE2d 193) (1964) (rule that remedial statutes are entitled to liberal construction " 'does not justify ignoring plain words' ").

[15] See *Hinton v. Interstate Guaranty Ins. Co.*, 267 Ga. 516, 518 (480 SE2d 842) (1997).

case here. A literal interpretation of "cancel" undeniably narrows the range of policy terminations to which OCGA § 33-6-5 (12) applies, but we cannot say that the legislature's decision to restrict only mass cancellations and not mass nonrenewals is absurd or unjust. If the legislature had intended to restrict both, then it would have said so, as it did elsewhere in the unfair trade practices chapter.

Because St. Paul nonrenewed, rather than cancelled, the medical malpractice policies at issue, OCGA § 33-6-5 (12) did not apply.

2. In light of our holding in Division 1, we need not address the meaning of "entire line or class of business" in OCGA § 33-6-5 (12).

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JANUARY 31, 2002.

*Thurbert E. Baker, Attorney General, Robert S. Bomar, Deputy Attorney General, Harold D. Melton, Senior Assistant Attorney General, Sidney R. Barrett, Assistant Attorney General,* for appellants.

*King & Spalding, Ralph B. Levy, Richard L. Shackelford, Robert M. Keenan III, Michael A. Sexton,* for appellees.