## A03A0137. MONTGOMERY COUNTY v. SHARPE.
### (582 SE2d 545)

ANDREWS, Presiding Judge.

Montgomery County appeals the trial court's grant of summary judgment to Lawana Sharpe, Tax Commissioner, and the denial of its own motion for summary judgment in its declaratory judgment action regarding commissions collected by Sharpe on automobile tag fees from 1990 until 2001.[1]

The following facts are not disputed. Since January 1, 1981, Sharpe has served as Montgomery County Tax Commissioner. Also, since that time, Sharpe has served as the tag agent for the county, designated by the commissioner of the Department of Revenue. As Tax Commissioner, an elected official of the county, Sharpe was not a regular employee and did not receive benefits available to county employees, such as insurance and bonuses. She was paid a salary as provided in OCGA § 48-5-183, the amount of which was determined by the population of Montgomery County. Since 1990, all monies received by her on the county's behalf in any capacity have been subject to an audit, the conclusions of which were compiled into an annual financial report prepared by Harold Whitfield, a certified public accountant retained by the county. Since at least 1993, these audits have been conducted pursuant to Governmental Accounting Standards, which include determining the county's compliance with applicable State and federal laws and regulations, including whether officials had been paid funds to which they were entitled.

These annual audits contained a line item reflecting that Sharpe was receiving the tag fees and that the money was not going into the county registry. Sharpe maintained five checking accounts for funds

---

[1] The motion of appellee Sharpe to dismiss the appeal for failure of Montgomery County to file its brief on time (it was filed nine days late, thereby subjecting counsel and party to contempt proceedings as well as the possibility of dismissal of the appeal, Court of Appeals Rules 7 and 26 (a)) is hereby denied and the merits of the appeal considered.

collected by her on behalf of the county, one of which was the tag fee account from which she disbursed funds, including checks to herself representing her commissions. In 1989, Sharpe had inquired of the then county auditor regarding the tag fees and was told she was entitled to them. It was not until 2000 that auditor Whitfield raised a question concerning the tag fees. Upon inquiring of the county attorney, the auditor was advised that, possibly, Sharpe was not entitled to the tag fees.

This action was filed by the county seeking a declaration that Sharpe was not entitled to the fees and the recovery of the funds already paid to her over the preceding nine years. Sharpe claimed that she was entitled to the fees, but, even were she not, the statute of limitation and the voluntary payment doctrine barred recovery of the fees by the county.

The trial court found, and Sharpe does not dispute on appeal, that, because Sharpe was paid more than $7,999 as Tax Commissioner, she was not entitled to receive a portion of the tag fees as compensation. OCGA §§ 48-5-183; 40-2-33 (c) (2). The trial court also found, however, that the payments were voluntary under OCGA § 13-1-13 and the county could not recover the payments made.

OCGA § 13-1-13 provides that

> [p]ayments of claims made through *ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party* are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

(Emphasis supplied.)

The party seeking to recover payments made bears the burden of showing that the voluntary payment doctrine does not apply. *Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282, 284 (1) (542 SE2d 640) (2000).

Nothing in the record before us indicates that payment of these commissions was anything other than a mistake of law on both Sharpe's and the auditors' parts. Further, nothing indicates that any county official ever questioned the payments until auditor Whitfield became aware of similar situations in other counties and cities in 2000 and inquired of the county attorney.

In such a situation, recovery of the amounts so paid is precluded. *Twiggs County v. Oconee Elec. Membership Corp.*, 245 Ga. App. 231,

232-233 (1) (536 SE2d 553) (2000); see *Telescripps Cable Co.*, supra; *Chemin v. State Farm &c. Ins. Co.*, 226 Ga. App. 702, 703 (487 SE2d 638) (1997); *Cotton v. Med-Cor Health Information &c.*, 221 Ga. App. 609, 611 (2) (472 SE2d 92) (1996).

Montgomery County's reliance on *Burke v. Wheeler County*, 54 Ga. App. 81, 85 (4) (187 SE 246) (1936), is misplaced. There, an accountant filed suit against Wheeler County seeking to recover fees he claimed due pursuant to a contract with the county for his audit of the books of the tax collector. The contract, entered into by the sole county commissioner and the accountant, provided that one-half of the fee would be paid by the county and the other half by the county's Board of Education. The county set up as a defense the illegality of the contract, based on the commissioner's failure to reduce the contract to writing and place it on the minutes until after the completion of the audit, but before suit was filed, and sought return of the funds already paid by the Board of Education. This Court concluded that, as to the county, the contract was binding in that reducing it to writing and placing it on the minutes before suit was brought were sufficient. As to the Board of Education, however, it was concluded that there was no authority for the Board to enter into a contract with an accountant and the fact that funds had been paid by the Board "under an illegal and unauthorized contract would not estop or prevent the proper authorities of the county from bringing a suit for the recovery of the same." The authority cited for this was *City Council of Dawson v. Dawson Waterworks Co.*, 106 Ga. 696, 734 (32 SE 907) (1899), which dealt with the power of a municipality to incur debt pursuant to the constitution, and concluded that when a benefit is received by one of the contracting parties "from a contract which is void because prohibited by the constitution, or because contrary to public policy, the receiving of such benefit will not prevent the party receiving it from setting up against a suit to enforce the contract the defense that the contract was illegal and void." Id.

The present situation does not involve an attempt to recover funds from a county pursuant to a void contract or the county's attempt to recover funds paid pursuant to a void contract. *Howard v. Brantley County*, 260 Ga. App. 330 (579 SE2d 758) (2003), and *Twiggs County*, supra, are controlling here. In *Twiggs County*, supra, in 1984, the county requested the local Electric Membership Corporation (EMC) to move utility lines in anticipation of road improvements. The EMC did so over several years. After each completed movement, the EMC invoiced the county. In 1993, the Board of Commissioners voted to pay this entire expense and recorded this action in the county's minutes. No contract, however, was ever entered into. The county continued paying the monthly sums due until the complete amount was paid in 1994. In May 1997, having decided the pay-

ments had been improper, the county sued to recover these amounts from the EMC.

In affirming the grant of summary judgment to the EMC, we concluded that, while

the law is clearly established that in order to be enforceable, a contract with a county must be in writing[,] *Hatcher v. Hancock County Commrs[.] &c.*, 239 Ga. 229 (236 SE2d 577) (1977); *PMS Constr. Co. v. DeKalb County*, 243 Ga. 870 (257 SE2d 285) (1979)[,] [n]evertheless, in certain narrowly defined circumstances in which judgment in a case has already been entered, our courts have found the provisions of OCGA § 36-10-1 [(necessity of written contract to bind county)] could not be raised because they were not timely asserted. See *Hall County v. Smith*, 178 Ga. 212 (4) (172 SE 645) (1934); *Early County v. Fielder & Allen Co.*, 4 Ga. App. 268 (1) (63 SE 353) (1908) (after judgment county was not allowed to raise argument that contract with it was not written). In *Malcom v. Fulton County*, 209 Ga. 392 (8) (73 SE2d 173) (1952), the Supreme Court stated: "(i)t seems very clear to us that county commissioners cannot make a contract (o)n behalf of the county, fail to record it in discharge of their official duty, and then rescind it because it is not recorded, as the commissioners in this case undertook to do." Id. at 400. Similarly, in this case, the county may not now raise the argument that the provisions of OCGA § 36-10-1 were not followed when it paid the amounts and then waited more than two years to file suit to recover the monies paid. Compare *Burke v. Wheeler County*, [supra at 81] (where public funds were illegally paid because the board of education exceeded its legal authority, it was proper for the county to bring a suit for recovery of money). Our decision comports with the doctrine of voluntary payments under OCGA § 13-1-13. In this regard, see *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400 (349 SE2d 368) (1986). We emphasize this is not a case in which the EMC or another party seeks to enforce a contract for payment against the county based on an alleged contract with the county. In that context, these essential requirements of a valid contract with the county cannot be waived. See, e.g., *Graham v. Beacham*, 189 Ga. 304 (5 SE2d 775) (1939). In the context of such an action, the rule that an agreement must be in writing is absolute and applicable to every contract made with the county. See *Cherokee County v. Hause*, 229 Ga. App. 578 (494 SE2d 234) (1997).

*Twiggs County*, supra at 232-233.

In *Howard v. Brantley County*, supra, the county sued Southern Striping, Inc. (Southern) seeking return of funds paid to the company for striping county roads, on the theory of money had and received. In February 2000, the chairman of the county commission had orally negotiated with Howard of Southern for the work and Southern undertook it, invoicing the county six times from March until June 2000. The county paid Southern a total of $190,600, although the project had not been put out for competitive bidding, there was no written contract and no "contract" had been approved by the county and entered on the minutes, and the matter had never been presented to, consented to, or voted upon by the Board of Commissioners.

The county sued Southern for money had and received, and the trial court granted summary judgment to the county, finding that, in *Twiggs County*, supra, this Court "emphasized that our decision did not extend to circumstances in which public funds were illegally paid in that the contract at issue, had it been written, was ultra vires as beyond the legal authority of the county to enter. [Cits.] . . . [T]he instant contract, even if written, was illegal as beyond Brantley County's authority." *Howard*, supra at 332 (2).

Here, there was no dispute that Sharpe legally collected the tag fees over the years and that she was legally entitled to compensation. The sole issue was the amount of compensation, all parties knew that Sharpe was being paid a commission from the fees, and all parties were mistaken as to the law applicable to this issue.

The trial court did not err in granting Sharpe's motion for summary judgment and denying that of the county on the theory of voluntary payment.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED MAY 23, 2003.

*Malcolm F. Bryant, Jr.*, for appellant.
*Durden, Kaufold, Rice & Barfield, Howard C. Kaufold, Jr.*, for appellee.