## A04A1799. FITZGERALD WATER, LIGHT & BOND COMMISSION v. SHAW INDUSTRIES, INC.

(606 SE2d 10)

ELLINGTON, Judge.

Fitzgerald Water, Light & Bond Commission ("the Commission") appeals from the superior court's order denying its motion for summary judgment on Shaw Industries, Inc.'s counterclaims based upon alleged overpayments for electrical service.[1] Because the doctrine of voluntary payment bars Shaw Industries' claims, the trial court erred in denying the motion for summary judgment.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592-593 (472 SE2d 140) (1996). Viewed in this light, the record reveals the following relevant, undisputed facts.

Shaw Industries operates yarn manufacturing plants in Georgia. Since 1983, Shaw Industries has purchased electricity from the Commission, a municipal electrical authority within the jurisdiction of the Public Service Commission ("PSC"). See OCGA § 46-3-12. Although the Commission is subject to the authority of the PSC in some respects, its electricity rates, charges, and service rules and regulations "shall not otherwise be fixed by the [PSC]." Id.

In late 1999, Shaw Industries hired two energy consultants to audit its electric bills from 1992 through 1999. These consultants concluded that the Commission overcharged Shaw Industries $375,721.37 during that period by using a higher fuel cost recovery factor ("FCR") than the factor used by Georgia Power and by failing to give Shaw Industries credits it would have been entitled to under Georgia Power's RA-1 and LBR-1 riders.

Although the record shows that Shaw Industries purchased electrical power from the Commission from 1992 through 1999, it contains no contract or letter agreement between Shaw Industries and the Commission for the purchase of electricity, or any document establishing the details of the Commission's rate structure, for that

---

[1] The Commission brought a complaint for declaratory judgment against Shaw Industries on March 14, 2001, seeking, among other things, to determine whether Shaw Industries was entitled to stop purchasing electricity from it and to change its electricity supplier. Shaw Industries answered and counterclaimed for breach of contract and for money had and received, seeking damages for the alleged overpayments. On December 15, 2003, the Commission moved for summary judgment on those counterclaims. The trial court denied the motion and issued a certificate of immediate review. We granted the Commission's application for interlocutory appeal to consider whether the trial court erred in denying the motion.

period.[2] However, each monthly invoice that the Commission sent Shaw Industries noted that billing was done "using [the] Georgia Power Co. PLL-2 rate" then in effect. Based on the record before us, the Commission admittedly charged for electricity using or tracking a Georgia Power base rate. Shaw Industries contends that the Commission deviated from Georgia Power's PLL-2 rate scheme by applying a greater FCR factor than permitted and by failing to adjust their bills by the amounts specified in certain "riders" to Georgia Power's PLL-2 rate structure. The Commission asserts, however, that Georgia Power's FCR factor and riders have never been a part of its rate structure, nor are they required to be by law. In any event, it is undisputed that the Commission sent Shaw Industries an invoice every month setting out in detail its total electrical usage, the applicable rates, the FCR factor actually used, and the resulting adjustments to the bill.

Shaw Industries concedes that the Commission's alleged over-billing was not the result of an intentional or bad faith act. Further, Shaw Industries' utilities engineer deposed that he got itemized bills each month from the Commission. He explained that both the Commission and Georgia Power provided service to Shaw Industries' plants and that he routinely used the itemized bills of both companies to develop a raw cost per kilowatt hour to compare power usage and costs between plants. However, he admitted that he did not check the bills to determine whether the charges were accurate or compare the FCR and rider details of Georgia Power bills with the Commission bills.

The engineer further explained that every utility company uses a different FCR factor and that it was no surprise to him that the Commission was not using Georgia Power's factor. He admitted that Georgia Power's bills, like the Commission's, revealed any adjustments to its base rate by showing the FCR factor used and any riders applied. However, neither he nor the plant manager ever compared

[2] Contrary to the assertions contained in Shaw Industries' brief, there is no document in the record purporting to be the Commission's "published rate structure" for 1992 through 1999 or a memorandum or contract that adopts Georgia Power's published rate structure in its entirety for this period of time. In fact, the document that Shaw Industries cites to as the Commission's published rate structure is a letter dated October 28, 1999, in which the Commission's business manager explains that the Commission charges according to *our* 'PLL-2' Schedule," and those rates are determined "by the five elected Commissioners that sit on *our* Commission Board." The business manager provided a copy of Georgia Power's PLL-2 rate structure, as requested, and a copy of a document on the Commission's letterhead that set out its base electrical rate for 1991, which noted across the bottom: "SALES TAX AND FUEL ADJUSTMENT ADDED TO ABOVE RATES WHERE APPLICABLE." None of the documents cited, including the Georgia Power PLL-2 forms, explained what the FCR rate was, how it was calculated, and whether it or any other adjustment would be applied to Shaw Industries during the relevant time period.

those adjustments to the Commission's bills, even though doing so would have revealed whether the Commission was adjusting it charges using Georgia Power's FCR factor and riders. The engineer also admitted that he knew the Commission was not applying Georgia Power's RA-1 rider and that fact never caused him any concern. Finally, he admitted he was unaware of any agreement between the Commission and Shaw Industries to adopt Georgia Power's rate structure.

1. The common law voluntary payment doctrine, codified at OCGA § 13-1-13,[3] provides that

> [w]hen money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back upon the ground that the party supposed he was bound in law to pay, when in truth he was not. He shall not be permitted to allege his ignorance of the law, and it shall be considered a voluntary payment. *White v. Rowland*, 67 Ga. 546, 557 (1881).

(Citations omitted.) *Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282, 285 (1) (542 SE2d 640) (2000) (cable subscribers voluntarily paid late payment fees charged, even though unaware that the late fees as calculated by the cable company might not have been legally enforceable as a liquidated damages provision). Further, although payments made under a mistake of fact may be recovered under some circumstances, Shaw Industries has not presented evidence from which a jury might infer such a mistake, such as payments made as a result of a computer error. See id. at 286 (1), citing *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 406 (349 SE2d 368) (1986).

In this case, Shaw Industries paid its electrical bills upon receipt of invoices that set out, in detail, the actual rates used to calculate its bill. The Commission's rates were not hidden from Shaw Industries; they were set out in writing each month for many years. Any inconsistencies between the amounts actually charged and the amounts Shaw Industries thought it should have been charged (i.e., based upon the rates, adjustments and riders set in Georgia Power's PLL-2 rate

---

[3] OCGA § 13-1-13 provides:
Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

scheme) could have been discovered simply by comparing the invoices received with the Georgia Power invoices it had on hand. Thus, even though Shaw Industries complains that it lacked actual knowledge of the rates it was charged, it had "the means of such knowledge" at its disposal. See *Telescripps Cable Co. v. Welsh*, 247 Ga. App. at 285 (1).

Although Shaw Industries admits it could have detected the alleged incorrect charges by simply looking at its bills, it nevertheless argues it reasonably relied on the Commission to check the bills for accuracy because the Commission had a duty to supply electrical service "pursuant to and consistent with its rates, charges, and service rules and regulations then in effect" under OCGA § 46-3-12. This is circular reasoning, however, as the voluntary payment doctrine provides that payments "made through ignorance of the law" are deemed voluntary and cannot be recovered. OCGA § 13-1-13. See *Telescripps Cable Co. v. Welsh*, 247 Ga. App. at 285 (1) (Voluntary payment doctrine barred recovery of a late fee that "was unenforceable under the law."); *Liberty Nat. Life Ins. Co. v. Radiotherapy of Ga. P.C.*, 252 Ga. App. 543, 544, 546-547 (1) (557 SE2d 59) (2001) (Voluntary payment doctrine barred recovery of payments on claims "providers were contractually prohibited by federal law from collecting.").

2. Given our holding in Division 1, the Commission's remaining enumeration of error is moot.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 10, 2004 —
RECONSIDERATION DENIED OCTOBER 14, 2004 — ■

*John T. Croley, Jr.*, for appellant.
*Powell, Goldstein, Frazer & Murphy, William V. Custer IV, Jennifer B. Dempsey, Mixon & Mixon, Warren L. Mixon*, for appellee.

