## A07A1345. BROWN v. GADSON.
### (654 SE2d 179)

MILLER, Judge.

Delores Brown entered into a written agreement in Florida with Gregory Gadson, whereby he agreed to provide semen to her for use in her attempt to become pregnant by artificial insemination. After having a second child by such procedure in North Carolina and moving to Georgia, Brown filed a petition for determination of paternity and to obtain an order for child support against Gadson. Gadson filed his verified answer and counterclaim, requesting that the petition be dismissed because the agreement of the parties relieved him of the duties of parenthood, including the duty to provide child support. We granted Brown's application for discretionary review of the trial court's order denying her motion to set aside its order granting Gadson's motion to dismiss. Brown appeals, contending that she is entitled to have the judgment of dismissal set aside because (i) the trial court's dismissal was based on mistake under OCGA § 9-11-60 (d) (2), and (ii) nonamendable defects appear on the face of the record in violation of OCGA § 9-11-60 (d) (3). Finding that the Florida agreement of the parties is not contrary to public policy under applicable precedent of the Supreme Court of Georgia and neither mistake nor nonamendable defect in the circumstances of this case, we affirm.

"A trial court's decision regarding a motion to set aside a judgment will not be reversed absent a showing of manifest abuse of discretion. *Young Constr. v. Old Hickory House # 3*, 210 Ga. App. 559, 561 (2) (436 SE2d 581) (1993)." *Kent v. State Farm &c. Ins. Co.*, 233 Ga. App. 564, 566 (2) (504 SE2d 710) (1998).

The record shows that the parties, both of whom were then married to other people, entered into an agreement on October 17, 2003. Under the terms of that agreement, Gadson agreed to provide his semen to a fertility clinic in Tampa, Florida, for Brown's use in conceiving a child by artificial insemination. As part of the agreement, Brown relinquished all her rights to hold Gadson legally, financially, or emotionally responsible for any child resulting from an artificial insemination procedure using his semen, and each party "relinquishe[d] and release[d] any and all rights he or she might have to establish paternity." Brown conceived two children by artificial insemination using Gadson's sperm, the first of which died at birth.

The instant litigation followed Gadson's failure to acknowledge paternity or provide child support for the benefit of the second child.[1]

Brown contends that the trial court erred in refusing to set aside its judgment of dismissal arguing "mistake" under OCGA § 9-11-60 (d) (2) because: (i) it based its decision upon findings of fact not recognizing the status of the parties as "known" to each other, rather than unknown, and (ii) the agreement of the parties was unenforceable for lack of consideration. Further, she argues entitlement to have the judgment of dismissal set aside under OCGA § 9-11-60 (d) (3) upon nonamendable defects appearing on the face of the record since: (i) the trial court considered matters beyond the pleadings, converting Gadson's motion to dismiss to a motion for summary judgment without giving her notice thereof, and (ii) the agreement of the parties purporting to foreclose the instant petition to establish paternity seeking child support was not court-approved.

1. Initially, we must address the fundamental question of whether the Florida agreement of the parties is enforceable in Georgia as not contrary to public policy. See OCGA § 1-3-9; *Gulf Collateral v. Morgan*, 415 FSupp. 319, 322 (IV) (S.D. Ga. 1976) (Georgia enforces comity with respect to the laws of other states only so long as its enforcement is not contrary to the public policy of this State).

Significantly in this regard, we first note that the Supreme Court of Georgia has opined that biological paternity does not correspond with the responsibility to provide support "in cases of artificial insemination." *Pruitt v. Lindsey*, 261 Ga. 540, 541 (2), n. 2 (407 SE2d 750) (1991). Further, we are mindful that the sperm here at issue was donated in Florida pursuant to an agreement made in Florida between residents of Florida and authorized by Florida law:[2]

> The donor of any egg, sperm, or preembryo, other than the commissioning couple or a father who has executed a preplanned adoption agreement under [the Florida code], shall relinquish all maternal or paternal rights and obligations with respect to the donation or the resulting children.

---

[1] Although the agreement provided that inseminations thereunder would "continue until conception occurs[,]" neither party challenges the agreement in this Court as inapplicable to the second child, and the agreement otherwise refers to "any child(ren)" resulting from artificial insemination.

[2] Georgia's statutes neither provide for nor contemplate the circumstances of this case, where a man and woman who are not married to each other, have employed artificial insemination under an agreement releasing the donor father from the duties and responsibilities of parenthood. See, e.g., OCGA § 19-7-21 (children born within wedlock and within the period of gestation by artificial insemination presumed legitimate upon the written consent of both spouses). The duties and responsibilities of parenthood where techniques for assisted human reproduction are involved, however, is more appropriately addressed by the General Assembly.

Fla. Stat. § 742.14; see also *Lamaritata v. Lucas*, 823 S2d 316, 319 (Fla. App. 2002) (holding under the foregoing statute that "[a] person who provides sperm for a woman to conceive a child by artificial insemination is not a parent").

Under these circumstances, we are constrained to find that the agreement of the parties is not unenforceable on public policy grounds and turn to Brown's claims of error.[3]

2. Brown contends that the trial court erred in refusing to set aside its judgment of dismissal for mistake under OCGA § 9-11-60 (d) (2), arguing that it based its decision upon findings of fact which failed to recognize the status of the parties as known to each other, rather than unknown. Similarly, she argues that she was entitled to have the judgment of dismissal set aside because the agreement of the parties was unenforceable for lack of consideration. We disagree.

> Although a court of equity may set aside a judgment for mistake, fraud or accident, [OCGA § 9-11-60 (d) (2)], a contested decisional error by a court, trial or appellate, as to fact, law or both, resulting in a judgment is not such a mistake as can be rectified [by motion to set aside],[4] in equity or otherwise, challenging that judgment. [Cits.]

*Todd v. Dekle*, 240 Ga. 842, 844 (242 SE2d 613) (1978); *Coker v. Coker*, 251 Ga. 542, 543 (307 SE2d 921) (1983). Inasmuch as Brown directs her claims of mistake to decisional or judgmental error underlying the trial court's judgment of dismissal, such claims are not cognizable under OCGA § 9-11-60 (d) (2). *Todd*, supra, 240 Ga. at 844. Accordingly, the trial court's dismissal of Brown's petition to determine paternity was not error on this account.

3. Brown also claims the judgment of dismissal should be set aside under OCGA § 9-11-60 (d) (3) based upon nonamendable defects appearing on the face of the record. She argues that these defects result because the trial court (i) converted Gadson's motion to dismiss under OCGA § 9-11-12 (b) (6) to a motion for summary judgment upon

---

[3] "The rule of lex fori dictates that Georgia courts will apply Georgia law governing procedural or remedial matters." (Punctuation and footnote omitted.) *Harper v. Harper*, 267 Ga. App. 553, 555 (1) (600 SE2d 659) (2004).

[4] In 1986,

> the legislature amended OCGA § 9-11-60 specifically to eliminate the "Complaint in equity" and its related equitable measures for setting aside judgments. Ga. L. 1986, p. 294. The equitable notions of "fraud, accident, or mistake unmixed with the negligence or fault of the complainant" were added to the "Motion to set aside" remedy at law.

(Footnote omitted.) *Lee v. Restaurant Mgmt. Svcs.*, 232 Ga. App. 902, 904 (2) (503 SE2d 59) (1998).

considering matters beyond the pleadings without giving her notice thereof (see *Jaynes v. Douglas*, 147 Ga. App. 678, 678-679 (250 SE2d 14) (1978)), and (ii) failed to approve the agreement of the parties under OCGA § 19-7-43 (b) (providing, among other things, that a petition to establish the paternity of a child may be barred upon a court-approved agreement between the "alleged or presumed father and the mother or child"). We disagree.

The trial court's order granting Gadson's motion to dismiss was based on the agreement of the parties, which was attached to and incorporated in the pleadings. As a result, the trial court's consideration of the same did not convert the motion to dismiss to a motion for summary judgment. See *Hendon Properties v. Cinema Dev.*, 275 Ga. App. 434, 435 (620 SE2d 644) (2005) ("Although considering matters outside the pleadings generally converts a motion to dismiss into a motion for summary judgment, a trial court may properly consider exhibits attached to and incorporated in the pleadings in considering a motion to dismiss for failure to state a claim for relief.") (footnotes omitted). And, inasmuch as the trial court by its judgment of dismissal enforced such agreement as a valid contract, there was no violation of OCGA § 19-7-43 (b) for lack of a court order approving the same. Brown, therefore, is not entitled to have the agreement set aside based upon nonamendable defects appearing on the face of the record under OCGA § 9-11-60 (d) (3).

Under these circumstances, the trial court did not err in denying Brown's motion to set aside its judgment of dismissal. *Kent*, supra, 233 Ga. App. at 566 (2).

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 8, 2007 — 

*Divida Gude*, for appellant.
*Constance M. Daise*, for appellee.