### A09A0701. ELLISON et al. v. SOUTHSTAR ENERGY SERVICES, LLC.

(679 SE2d 750)

MIKELL, Judge.

Charles H. Ellison and Susan B. Bresler ("plaintiffs") filed this class action against Southstar Energy Services, LLC d/b/a Georgia Natural Gas ("GNG"), a company engaged in the business of selling natural gas to retail customers. Plaintiffs sought to recover alleged overpayments made to GNG by its existing customers. Plaintiffs asserted that, beginning in October 2006, GNG charged its existing customers an amount in excess of that permitted under the provisions of the Natural Gas Competition and Deregulation Act (the "Gas Act").[1] GNG moved to dismiss the action for failure to state a claim pursuant to OCGA § 9-11-12 (b) (6), on the grounds that plaintiffs' claims were barred by the voluntary payment doctrine.[2] In a three-sentence order citing the voluntary payment doctrine, the trial court granted GNG's motion to dismiss. Plaintiffs appealed. Because we conclude that the voluntary payment doctrine does not apply under the circumstances presented here, we reverse.

"A motion to dismiss for failure to state a claim should be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of the claim."[3] When ruling on a motion to dismiss, "all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor."[4] We review de novo the trial court's ruling on a motion to dismiss.[5]

Under this standard, the pleadings[6] show that, at all times relevant to this action, GNG, a natural gas marketer within the meaning of OCGA § 46-4-152 (13) of the Gas Act, sold natural gas to retail consumers, including plaintiffs. Under the Gas Act and the regulations promulgated by the Georgia Public Service Commission (the "Commission") pursuant thereto, the Commission does not

---

[1] OCGA § 46-4-150 et seq.

[2] OCGA § 13-1-13.

[3] (Citations omitted.) *Lincoln Nat. Life Ins. Co. v. Davenport*, 201 Ga. App. 175, 176 (410 SE2d 370) (1991). Accord *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997); *Brown v. Dorsey*, 276 Ga. App. 851, 852 (625 SE2d 16) (2005).

[4] (Punctuation and footnote omitted.) *Brown*, supra at 852. Accord *Anderson*, supra.

[5] *Common Cause/Ga. v. Campbell*, 268 Ga. App. 599, 601 (2) (602 SE2d 333) (2004). Accord *Brown*, supra.

[6] In reviewing the trial court's order, we have properly considered exhibits attached to and incorporated in the pleadings. See *Hendon Properties v. Cinema Dev.*, 275 Ga. App. 434, 435 (620 SE2d 644) (2005). Accord *Anderson*, supra; *Brown v. Gadson*, 288 Ga. App. 323, 326 (3) (654 SE2d 179) (2007).

regulate the price at which a marketer sells gas;[7] however, each marketer is required to file each month with the Commission a description of the "standard fixed offer" and the "standard variable offer"[8] under which it sells natural gas to consumers,[9] and the price billed by the marketer must not exceed the published price.[10] The published offer must include the "cost per therm for the commodity" as well as "the marketer customer service charge."[11]

Until December 2006, GNG's Variable Market Plan (the "Original Plan") was the standard variable pricing plan provided to consumers by GNG, and plaintiffs were enrolled in this Original Plan at all times material to this action.[12] As reflected in GNG's Monthly Marketer Pricing Form (the "Monthly Form") filed with the Commission[13] for September 2006, GNG charged customers enrolled in the Original Plan a customer service charge of $5.95 and a price per therm of $1.149. The per-therm price fluctuated every month (hence the term, "variable plan"). As to bills for months after September 2006, plaintiffs allege that GNG overcharged its Original Plan customers both as to the customer service charge and as to the per-therm price.

*Allegations as to excessive customer service charges.* Although GNG continued to charge existing Original Plan customers, including plaintiffs, the pre-existing customer service charge of $5.95, this $5.95 charge was not reflected in the filings GNG made with the Commission after September 2006. In October and November 2006, GNG filed Monthly Forms showing that the customer service charge for the Original Plan was $3.99, with a footnote stating that

---

[7] Ga. Comp. R. & Regs. r. 515-7-3-.04 (3) ("[t]he price at which a marketer sells gas shall not be regulated by the Commission").

[8] The "standard variable offer" is also known as the *default* variable price plan, because those customers who do not affirmatively select another plan are enlisted in the standard variable offer.

[9] Ga. Comp. R. & Regs. r. 515-7-3-.04 (14) ("[e]ach marketer shall file at the Commission by the [fifth] of the current month, the marketer's standard fixed offer for residential customers and standard variable offer for residential customers").

[10] See OCGA § 46-4-160 (h) ("[t]he price for natural gas billed to a natural gas consumer shall not exceed the marketer's published price effective at the beginning of the consumer's billing cycle"); Ga. Comp. R. & Regs. r. 515-7-6-.01 (m) (" '[p]ublished price' means the charge assessed by a marketer for a therm of natural gas, and, if applicable, any separate or additional marketer charges for interstate capacity and customer service that are on file with the . . . Commission"); Ga. Comp. R. & Regs. r. 515-7-6-.02 (a) (5) ("[t]he competitive retail natural gas service charges billed to a consumer shall not exceed the marketer's published price in effect at the beginning of the consumer's billing cycle").

[11] Ga. Comp. R. & Regs. r. 515-7-3-.04 (14) ("the marketer's . . . standard variable offer for residential customers . . . shall include the cost per therm for the commodity and . . . the marketer customer service charge, and any other charges to be included in the offer[ ]").

[12] In their Second Amended Complaint (the "Complaint"), filed June 30, 2008, Plaintiffs define the "Class Period" of this action as running "from October 1, 2006, to the present."

[13] See Ga. Comp. R. & Regs. r. 515-7-3-.04 (14).

172

"Customer Service Charges for *new* customers range from $3.99 to $9.99 based on credit score."[14] The listed $3.99 charge and the footnote following, taken together, implied that for October and November 2006, customer service charges for *existing* customers in the Original Plan had been reduced to $3.99. On the website of the Commission, however, in the chart prepared by the Commission comparing the various gas marketers' standard variable offers for October 2006, the customer service charge for GNG's Original Plan was described as "from $3.99 to $9.99 based on credit score," without limitation to new customers. Plaintiffs allege that no credit scores were obtained on existing customers. Plaintiffs further allege that GNG actively misled complaining Original Plan customers by telling them that their customer service charges were based on a credit score, even though they were not. Starting in December 2006, GNG no longer listed its Original Plan on its Monthly Form filed with the Commission. Instead, GNG filed a cover letter, in which it set forth the Original Plan's price per therm for that month, without making any mention of the customer service charge to be assessed for that month under the Original Plan.

*Allegations as to excessive price-per-therm charges.* In December 2006, GNG introduced a new standard (or default) variable offer, available only to new customers. This plan, called the Variable Select Plan (the "New Plan"), was described in the December 2006 Monthly Form filed by GNG as having a customer service charge ranging from $3.99 to $9.99, based on credit score, and a per-therm gas charge of $1.359 (or $1.429, "depending on credit check," according to the footnote). As noted above, from this point forward, GNG relegated disclosure as to the Original Plan to a cover letter filed with the Commission. The cover letter filed for December 2006 stated a per-therm price for the Original Plan of $1.369 (later corrected to $1.399). GNG continued to bill plaintiffs under the Original Plan, even though the New Plan might have offered a lower per-therm charge and a lower customer service charge. GNG did not provide plaintiffs with notice of the establishment of the New Plan; nor were plaintiffs given the opportunity to enroll in the New Plan; nor were plaintiffs advised that their plan, the Original Plan, was no longer GNG's default variable price plan.

The gravamen of plaintiffs' action is that GNG violated the Gas Act by charging plaintiffs more under the Original Plan than they would have been charged under the New Plan. In Count 1 of their Complaint, plaintiffs sought damages for alleged violations of the Gas Act's billing and notice requirements set forth in OCGA §

---

[14] (Emphasis supplied.)

46-4-160 (h), Ga. Comp. R. & Regs. r. 515-7-6-.02 (a) (5), and Ga. Comp. R. & Regs. r. 515-7-6-.02 (a) (9) (requiring notice of a marketer's changes in "methodology"). In Count 2, plaintiffs sought general, exemplary, and treble damages for intentional violations of the Gas Act, under the Fair Business Practices Act of 1975 (imported into the Gas Act by OCGA § 46-4-160.5 (b)). In Count 3, plaintiffs sought damages for breach of private duty[15] under the Gas Act's "bill of rights for consumers" found in OCGA § 46-4-151 (b) (9). In Count 4, plaintiffs seek refunds of the alleged overpayments pursuant to the procedures for correcting "billing errors" found in OCGA § 46-4-160.2 of the Gas Act.[16] In Count 5, plaintiffs assert a claim against GNG for unjust enrichment.

The trial court granted GNG's motion to dismiss for failure to state a claim, based on the voluntary payment doctrine. Thus, the issue before this Court is whether the voluntary payment doctrine operates to bar recovery of payments made by plaintiffs to GNG pursuant to GNG's invoices, even if GNG violated the Gas Act in issuing the invoices.

The voluntary payment doctrine is codified at OCGA § 13-1-13:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

"The party seeking to recover payments made bears the burden of showing that the voluntary payment doctrine does not apply."[17] Even if the plaintiff does not have actual knowledge of all of the facts, the doctrine will still bar recovery where the plaintiff had constructive

---

[15] See OCGA §§ 51-1-6 ("[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby"); 51-1-8 ("[p]rivate duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action").

[16] OCGA § 46-4-160.2 (a) provides that, if a customer makes an overpayment to the marketer due to a billing error, the marketer must "automatically and immediately" provide the customer with either a credit or a refund of the overpayment.

[17] (Citation omitted.) *Montgomery County v. Sharpe*, 261 Ga. App. 389, 390 (582 SE2d 545) (2003).

174

knowledge of the material facts.[18]

1. In three related enumerations of error, plaintiffs contend that the voluntary payment doctrine should not be applied to bar claims based on violations of the Gas Act. We agree.

The Gas Act and the regulations promulgated thereunder form a highly technical and convoluted legislative scheme. Because the Gas Act's purpose is clearly remedial,[19] it should be liberally construed.[20] In light of its remedial purpose, the voluntary payment doctrine should not be applied to bar actions by gas consumers to recover overpayments made to the gas marketer.

Further, in light of the private right of civil action provided in OCGA § 46-4-160.5 of the Gas Act,[21] we conclude that *Oxford v. Shuman*,[22] cited by plaintiffs, is more analogous to the case at hand than *Fitzgerald Water &c. Comm. v. Shaw Indus.*,[23] *Telescripps Cable Co. v. Welsh*,[24] and *Cotton*,[25] relied upon by GNG.

In *Oxford*, a taxpayer sought a tax refund under a statute providing specifically for such an action.[26] This Court refused to apply the voluntary payment doctrine in that case, on the ground that a general statute (such as the voluntary payment doctrine) should not apply where a specific statute (the statute providing for a taxpayer's suit for refund) expressly provided for a refund of the overpayment.[27] We note that, where statutes are in irreconcilable conflict, "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them."[28] In OCGA § 46-4-151 (a) (4), the legisla-

---

[18] *Cotton v. Med-Cor Health &c.*, 221 Ga. App. 609, 611 (2) (472 SE2d 92) (1996) (plaintiff must show that "a valid reason existed for [his] failure to determine the truth" in order to avoid application of the doctrine) (citation and punctuation omitted).

[19] See OCGA § 46-4-151 (a) (4) ("The General Assembly finds . . . [t]hat protecting natural gas consumers in this new reliance on market based competition is the most important factor to consider in any decisions to be made in accordance with this article").

[20] See *Ins. Dept. &c. v. St. Paul Fire &c. Ins. Co.*, 253 Ga. App. 551, 554 (1) (559 SE2d 754) (2002).

[21] OCGA § 46-4-160.5 (a) provides a right of civil action to "[a]ny retail customer who is damaged by a marketer's violation of any provision of Code Section 46-4-160"; OCGA § 46-4-160.5 (b) declares any violation of OCGA § 46-4-160, or the regulations promulgated thereunder, to be a violation of Georgia's Fair Business Practices Act.

[22] 106 Ga. App. 73 (126 SE2d 522) (1962).

[23] 270 Ga. App. 68 (606 SE2d 10) (2004).

[24] 247 Ga. App. 282 (542 SE2d 640) (2000).

[25] Supra.

[26] *Oxford*, supra at 77-78 (2) (b).

[27] Id. at 79 (c). See also *Hawes v. Smith*, 120 Ga. App. 158 (169 SE2d 823) (1969) ("the right to sue for [a tax] refund has always been an available remedy at common law, and the only effect of having such right expressly recognized by statute has been to remove the defense of voluntary payment [under the predecessor of OCGA § 13-1-13]") (citation omitted).

[28] (Citation, punctuation and emphasis omitted.) *Hooks v. Cobb Center Pawn &c.*, 241 Ga. App. 305, 309 (6) (527 SE2d 566) (1999).

ture has indicated, not a contrary intent, but a specific intent to give force to the consumer protections provided by the Gas Act.

In the cases relied upon by GNG, the voluntary payment doctrine was applied to bar recovery of money paid, even though the collection of the money violated a contract or a statute.[29] In none of these cases, however, did the party seeking repayment rely upon a specific statutory private right of action, as here.[30] We conclude that these cases are not controlling as to the application of the voluntary payment doctrine to plaintiffs' Gas Act claims in the case at hand.

2. GNG argues that the information filed with the Commission and available on the Commission's website, together with the information contained in plaintiffs' GNG bills, provided all the information plaintiffs needed to determine that they were being overcharged. However, we note that the bills GNG sent to plaintiffs do not show a "credit score"; nor does any GNG filing with the Commission detail exactly how a particular "credit score" would affect either the customer service charge or the price per therm. Therefore, at least as to the months for which the record before us contains GNG's filings with the Commission, it is not clear how plaintiffs could have determined what they would have been charged under the New Plan. Both parties to this appeal appear to assume that plaintiffs' gas bills under the New Plan would have been determined under the lowest rates possible; that is, that plaintiffs would have qualified for the top "credit score." But there is no evidence in the record to support the assumptions of the parties. If the charges varied according to an unrevealed system of credit scores, it would have been impossible for plaintiffs to find out what they were really supposed to be paying. Under these circumstances, their payments would not have been "voluntary" within the meaning of OCGA § 13-1-13. That statute applies only where "all the facts are known"[31] or could have been determined.[32]

3. In reviewing the trial court's ruling on GNG's motion to dismiss plaintiffs' complaint, we express no opinion on the merits of plaintiffs' claims, other than that they are not barred by the voluntary payment doctrine. Specifically, we venture no opinion as to whether a "billing error" occurred within the meaning of

---

[29] Fitzgerald, supra at 70-71 (barring recovery of payments in excess of contractual obligations under contract with electric supplier); Telescripps, supra at 285 (1) (barring recovery of payments for late fees, even where fees constituted an unenforceable penalty); Cotton, supra at 612 (2) (barring recovery of payments imposed in contravention of a statute).

[30] Fitzgerald, supra at 68, n. 1; Telescripps, supra at 283; Cotton, supra at 609.

[31] See OCGA § 13-1-13; Telescripps, supra at 285 (1) (recovery barred where customers paid fees in ignorance of law).

[32] See Fitzgerald, supra at 70-71 (1) (voluntary payment doctrine applied where party seeking repayment had the means at hand to discover discrepancy in electric bills).

OCGA § 46-4-160.2 or as to whether GNG changed its "methodology" within the meaning of Ga. Comp. R. & Regs. r. 515-7-6-.02 (a) (9).

*Judgment reversed. Miller, C. J., Johnson, P. J., and Ellington, J., concur. Andrews, P. J., Blackburn, P. J., and Adams, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

In an effort to implement the Gas Act's policy of protecting natural gas consumers, the majority nullifies the defense of voluntary payment, OCGA § 13-1-13, against claims arising under the Act's private right of action. But the Act itself never mentions, let alone abrogates, this or any other defense. Because our well-developed law of consumer class actions authorizes the defense of voluntary payment in such cases, and because that defense actually bars these plaintiffs' claims, I respectfully dissent.

According to the majority, the gist of this suit is that plaintiffs were charged "more under the Original Plan than they would have been charged under the New Plan." But the second amended complaint itself concedes that customers might be charged a higher service charge under the New Plan than under the Original Plan, depending on their credit scores. Plaintiffs also concede that their billing statements reflected the charges consistently applied to their accounts under the Original Plan and that any lower prices charged to other customers were available to them on the Georgia Natural Gas website.

The majority avoids considering the factitiousness of plaintiffs' actual claims by holding as a matter of law that the private right of action created in OCGA § 46-4-160.5 is in "irreconcilable conflict" with the voluntary payment doctrine. But it is commonplace that statutory schemes such as the Gas Act are in derogation of the common law and must therefore be strictly construed. "Where a statute gives a right which did not exist at common law, it must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute." (Punctuation omitted.) *Nicholl v. Great Atlantic &c. Co.*, 238 Ga. App. 30, 39 (517 SE2d 561) (1999). Neither OCGA § 46-4-160.5 nor any other part of the Gas Act purports to abrogate any common law or statutory defense. As the Northern District of Georgia explained when it dismissed the same claims before us today, there is "no actual conflict between the statute barring recovery of voluntary payments and the Gas Act's provision for a right of private action" because plaintiffs "could have refused to pay the allegedly improper charges and then brought suit under [OCGA] § 46-4-160.5 for damages they suffered as a result." *Robbins v. SCANA Energy Marketing*, Case No. 1-08-CV-640-BBM (N.D. Ga. 2008).

This Court has authorized voluntary payment as a defense to consumer class actions in opinions cited and followed by state and federal courts across the country. See *Cotton v. Med-Cor Health &c.*, 221 Ga. App. 609, 611 (2) (472 SE2d 92) (1996) (physical precedent only) (affirming grant of motion to dismiss class action by hospital patients on the ground that the voluntary payment doctrine barred plaintiffs' claims); *Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282, 284-287 (1) (542 SE2d 640) (2000) (following *Cotton* and reversing denial of motion to dismiss class action by cable consumers on the ground that the voluntary payment doctrine barred plaintiffs' claims). As the Missouri Court of Appeals noted in a recent opinion extending this line of our cases, *"[t]he majority of jurisdictions support the use of the voluntary payment doctrine as an affirmative defense in actions to recover fees or surcharges alleged to be illegal."* (Emphasis supplied.) *Huch v. Charter Communications*, 2008 Mo. App. LEXIS 531 at *17 (April 15, 2008) (following both *Cotton* and *Telescripps*); see also *Robbins*, supra (following *Cotton* and *Telescripps*); *Halle Dev. v. Anne Arundel County*, 808 A2d 1280 (Md. App. 2002) (following *Telescripps*); *Putnam v. Time Warner Cable*, 255 Wis. 2d 447, 470 (649 NW2d 626) (2002) (following *Telescripps*); *Time Warner Entertainment Co. v. Whiteman*, 741 NE2d 1265, 1271 (Ind. Ct. App. 2001) (following *Telescripps*).

In the absence of authority from the law of consumer class actions, the majority turns to tax cases for its assertion that GNG cannot assert a voluntary payment defense. See *Hawes v. Smith*, 120 Ga. App. 158 (169 SE2d 823) (1969), citing *Oxford v. Shuman*, 106 Ga. App. 73, 79 (2) (c) (126 SE2d 522) (1962). As our Supreme Court has pointed out, however, a tax payment is "not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority." *Luke v. Dept. of Natural Resources*, 270 Ga. 647, 648 (513 SE2d 728) (1999). Moreover, although the old version of the voluntary payment statute addressed itself to "[p]ayments of taxes or other claims" (see *Barker v. Federated Life Ins. Co.*, 111 Ga. App. 171, 173 (141 SE2d 206) (1965), quoting Civil Code 1933, § 20-1007), the modern version speaks only of "payment of claims," an acknowledgment by the General Assembly that tax refund claims deserve separate treatment under the law. As for the tax cases themselves, *Hawes* relies on *Oxford*, which notes that the voluntary payment defense does not apply when "there [is] a specific statute *relative to the tax collected*," (emphasis supplied) 106 Ga. App. at 79, and one of the two cases on which *Oxford* relies actually applied the defense to bar a tax refund claim. See *State Revenue Comm. v. Alexander*, 54 Ga. App. 295, 299 (187 SE 707) (1936) (reversing denial of Revenue Commission's demurrer to taxpayer's action where taxpayer made a voluntary payment of income tax without

noting protest).

Plaintiffs do not argue that GNG was prohibited from introducing a new standard variable offer, and the fact that GNG chose to entice new customers with rates that "might have" been lower than those charged to plaintiffs does not mean that plaintiffs' bills, which accurately reflected the terms they agreed to, contained "billing errors." But even if the bills could be construed as containing such errors in violation of the Gas Act, the voluntary payment defense would still apply. As *Telescripps* holds, in the absence of a mistake of fact, the "voluntary payment doctrine bars recovery *even if the charges imposed were in violation of a statute*." (Emphasis supplied.) *Telescripps*, 247 Ga. App. at 287 (1), citing *Cotton*, 221 Ga. App. at 612.

Because the voluntary payment defense is available to GNG in this case, and because plaintiffs paid their natural gas bills "without a valid reason for failing to ascertain the truth," *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 401 (349 SE2d 368) (1986), the trial court did not err when it granted GNG's motion to dismiss. I therefore dissent.

I am authorized to state that Presiding Judge Blackburn and Judge Adams join in this dissent.

DECIDED JUNE 2, 2009 —

*Strickland, Brockington & Lewis, Frank B. Strickland, Anne W. Lewis, Jason R. Doss*, for appellants.

*Rogers & Hardin, Robert B. Remar, Jill E. Steinberg, Kimberly L. Myers*, for appellee.